210 N.J. Super. 107 (1986)
509 A.2d 241
FREDERICK B. THOMPSON, APPELLANT,
v.
NEW JERSEY STATE PAROLE BOARD, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 30, 1985.
Decided May 7, 1986.
*110 Before Judges PETRELLA, COHEN and ASHBEY.
Leigh B. Bienen, Assistant Deputy Public Defender, argued the cause for appellant (Thomas S. Smith, Acting Public Defender; Leigh B. Bienen, of counsel and on the brief).
Teresa M. Burzynski, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General, attorney; James J. Ciancia, Assistant Attorney General, of counsel and Teresa Burzynski, on the brief).
The opinion of the court was delivered by COHEN, J.A.D.
*111 Frederick B. Thompson appeals from a denial of parole. He has been an inmate at the New Jersey State Prison since 1968, serving a life sentence for murder. He contends that, in denying him parole and giving him a remote eligibility date, the Parole Board made an unconstitutional ex post facto application of the regulations adopted under the Parole Act of 1979, N.J.S.A. 30:4-123.45 et seq. He also argues that the Board improperly denied him disclosure of documents which it considered in his parole file. He applied to this court for access to those documents for appeal purposes. We reserved decision until now.

I.
We deal first with defendant's ex post facto arguments. Thompson was convicted of murder in 1968 for stabbing to death a 57 year-old woman who unsuspectingly entered her home after Thompson had broken into it. The murder occurred in 1967, only two days after Thompson was paroled from a Connecticut prison. He had eight adult convictions and had been continuously involved in seriously anti-social conduct since his youth. In the absence of a contrary recommendation from the jury which convicted him, Thompson was sentenced to death. N.J.S.A. 2A:113-4 (repealed).
In 1972, Thompson's death sentence was modified to life imprisonment after invalidation of the death penalty law in effect when he was sentenced. State v. Funicello, 60 N.J. 60, cert. den., 408 U.S. 942, 92 S.Ct. 2849, 33 L.Ed.2d 766 (1972). His tentative parole eligibility date was then listed as 1982. He was considered for parole in 1982 and denied, and a twenty-two month future eligibility term was imposed. Thompson was again denied parole in 1984, but this time he was given a future eligibility term of twelve years. Thompson asserts that the future eligibility term of twelve years was unlawfully imposed on him on the authority of N.J.A.C. 10A:71-3.19(d), which was *112 adopted more than a decade after his conviction. The regulation permits a lengthy future eligibility term to be set where the presumptive term would be clearly inappropriate for the circumstances of the offense, the history of the offender, and his institutional behavior.
The United States Constitution prohibits states from passing ex post facto laws. U.S. Const., Art. I, § 10. They are penal laws which are applied retrospectively to prior conduct and which are more onerous than the laws in effect at the time of the prior conduct. Weaver v. Graham, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17, 23 (1981). There is no question that the new parole regulations relate to penal matters, that they are intended to apply to conduct prior to their enactment, see N.J.S.A. 30:4-123.46(a), and that they have been applied to Thompson. The State argues that the regulations are not "laws," and that they are not more onerous than at the time of Thompson's conviction.
The U.S. Court of Appeals for the Third Circuit has held that New Jersey's parole regulations may be "laws" for the purpose of the bar against ex post facto laws. Royster v. Fauver, 775 F.2d 527, 534 (3 Cir.1985). Other United States Courts of Appeal have ruled otherwise with respect to federal parole guidelines. See cases collected in United States ex rel. Forman v. McCall, 776 F.2d 1156, 1159, n. 3 (3 Cir.1983), in which the Third Circuit held that the federal parole guidelines were not "laws." The United States Supreme Court has expressly reserved judgment on the question. See United States Parole Commission v. Geraghty, 445 U.S. 388, 408, 100, S.Ct. 1202, 1214, 63 L.Ed.2d 479, 498 (1980). We need not resolve the local question because we are satisfied that, if our regulations are considered to be penal laws, they are not more onerous than those in effect at the time of Thompson's offense.
Thompson argues that the current regulations are more onerous in two respects. The first is that they do not require annual reviews, as Thompson says they used to do, for prisoners *113 given remote future eligibility terms. It is unclear whether, in 1967, annual reviews were more than a usual but variable practice of the Board not required by regulation. It is of no consequence, however, because in early 1985 N.J.A.C. 10A:71-3.19(e) was amended to require annual reviews for Title 2A prisoners with lengthy future parole eligibility terms. The argument is therefore moot.
Thompson's second argument is that, under earlier regulations, he would not have received a 12 year future parole term after serving some 16 years of his sentence. The argument can be understood only after a brief review of recent developments of the penal law in New Jersey.
When Thompson committed the murder in 1967, the Parole Act of 1948 authorized the Board to grant parole to a prisoner only if it concluded:
that there is reasonable probability that * * * he will assume his proper and rightful place in society, without violation of the law, and that his release is not incompatible with the welfare of society. [N.J.S.A. 30:4-123.14 (repealed)].
The second quoted test required the Board to determine whether the "punitive aspects" of the sentence had been accomplished, that is, whether the prisoner had served sufficient time in terms not only of society's need for adequate punishment but also of the prisoner's progress toward rehabilitation. In re Trantino Parole Application, 89 N.J. 347, 368 (1982). It was a determination to be made by the Parole Board because the sentencing court did not have the responsibility of making it in fixing sentence.
In 1979, the new Code of Criminal Justice was enacted, and the Parole Act of 1979 accompanied it, not only in time, but also in legislative design. An entirely new approach to sentencing appeared in the Code. State v. Roth, 95 N.J. 334 (1984); State v. Hodge, 95 N.J. 369 (1984). Among its elements were longer sentences and mandatory minimum terms, which gave sentencing courts the ability and thus the responsibility to sentence in such a way as to assure that the punitive purposes of the sentence would be served by the time the prisoner became *114 eligible for parole. In re Trantino Parole Application, 89 N.J. at 369-370.
In the accompanying Parole Act of 1979, the Board was no longer told to consider whether release was "compatible with the welfare of society." Instead, its attention was directed solely to the question of the likelihood of recidivism. The new statute said:
An adult inmate shall be released on parole at the time of parole eligibility, unless [the Board finds] * * * by a preponderance of the evidence that there is a substantial likelihood that the inmate will commit a crime under the laws of this State if released. [N.J.S.A. 30:4-123.53].
The difficulty was that if the Parole Board considered only recidivism with respect to preCode prisoners, then neither the original sentencing decision nor the subsequent parole decision would take into account the essential element of the punitive purposes of the sentence. As a result, the Supreme Court instructed the Parole Board that, with respect to preCode prisoners only, it was to continue to take into account, in deciding whether to release a prisoner on parole, the question whether the punitive purposes of the sentence had been accomplished. In re Trantino Parole Application, 89 N.J. at 373.
It is apparent that the 1979 Parole Act's regulations do not apply to preCode prisoners a body of penal law more onerous than that in existence at the time they committed their crimes. The continuing obligation of the Parole Board to consider the punitive aspects of a preCode sentence does not represent a change in the law. It is rather a continuation of preCode conditions without imposition of more onerous terms. See Royster v. Fauver, 775 F.2d 527 (3 Cir.1985), where the U.S. Court of Appeals reached the same conclusion.
The Parole Board's denial of parole to Thompson and establishment of a twelve-year future parole eligibility term were contained in a Notice of Decision which reviewed the history of the offense and the offender. It recognized that Thompson had an adequate disciplinary record, a good work and housing record and had made positive strides. It determined, *115 however, that those elements were insufficient to overcome the punitive aspects of the sentence for a brutal murder; that Thompson had not sufficiently developed insight into his anti-social behavior or achieved significant behavioral and attitude changes or rehabilitative development.
On these bases, the Parole Board concluded:
* * * during the time served by Mr. Thompson, he has not responded to his punishment to the extent which insures his rehabilitation and that he has not readjusted himself in a manner which indicates that he will not commit criminal acts in the future. The Adult Panel has determined that punitive aspects of Mr. Thompson's sentence have not been served and that there is a substantial likelihood of future criminal activity if he is released on parole at the present time.
The Parole Board's determinations whether to grant parole are "impregnated with highly predictive and individualized discretionary appraisals." Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 359 (1973). They are not reversible except for arbitrariness, Monks v. N.J. State Parole Bd., 58 N.J. 238, 242 (1971), or abuse of discretion, State v. Lavelle, 54 N.J. 315, 322 (1969). On the basis of the Board's thorough consideration of Thompson, his history, his crime and his subsequent behavior, we have no basis upon which to criticize its judgment.
There is a suggestion in Thompson's brief that there is another and distinct ex post facto problem, this one arising out of the actual administration by the Board of the Trantino decision. The suggestion is that the Board uses the decision to justify delaying parole release for long enough to equalize the prison time served under preCode life sentences with the time served under Code life sentences with their lengthy parole ineligibility terms, see N.J.S.A. 2C:11-3b, and thus lengthier Code sentences are retroactively imposed for preCode crimes.
The complaint is not borne out by the Board's denial of parole to Thompson. One need not look so far to justify Board skepticism over the adequacy of the punishment of a prisoner who committed a break-in and a brutal murder two days after his last parole release. We have before us no factual information justifying the allegation that improper sentence equalization *116 is practiced by the Parole Board. We need not, therefore, decide what our response would be if that were shown to be the case.

II.
Thompson's second argument before us deals with access to his parole file. In the words of his brief, it is:
The record on appeal must be disclosed to the appellant as a matter of rudimentary fairness under State v. Kunz, 55 N.J. 128 (1969), and subsequent law.
What Thompson refers to is that part of his parole file which was not disclosed to him when the Board considered it, or since. Included in the Statement of Items Comprising the Record before us are Items 25 (Institutional Parole Package), 38 (Preparole Evaluation) and 39 (Psychological Report). Those items, according to the Attorney General, contain confidential materials which were not revealed to Thompson.
Thompson argues that he is entitled to access to all written materials about him which are before the Parole Board when making decisions affecting him. He says he should have them before his case is considered by the Board to give him the opportunity to counter inaccuracies which the Board might otherwise not recognize. In addition, he says, he should have the materials for purposes of appeal, to enable him to demonstrate the error of the Board's denial of parole.
Thompson's argument is built on State v. Kunz, 55 N.J. 128 (1969). There, the Supreme Court decided that a defendant is entitled to see the probation department presentence report which will be considered by the sentencing court, and to be heard on any adverse material contained in it. Kunz had been convicted of receiving a stolen automobile, his first conviction. His counsel was denied permission to inspect the presentence report, and Kunz was sentenced to State Prison. The Supreme Court examined the presentence report, and found that it included an allegation that defendant was involved in a stolen car ring, an allegation without support in the trial record.
*117 The Supreme Court weighed two competing considerations. One was the desirability of avoiding unchallengeable inaccuracies in presentence reports. Unless a defendant could see the report, no one with the requisite knowledge and interest would be able to point out errors. The second was the fear that loss of confidentiality would dry up sources of information useful to sentencing decisions. The court saw little justification for that fear in the experiences of the many jurisdictions that required disclosure. It noted widespread academic criticism of nondisclosure. Finally, it examined the comprehensive report of the ABA Advisory Committee on Sentencing and Review. The report recommended disclosure with minor exceptions, finding little basis for concern for sources of information or for undue delay in sentencing. It noted the suggestion that diagnostic matters should be withheld to avoid harming chances of defendant's rehabilitation, but concluded that the suggestion did not justify withholding other kinds of information.
The Kunz court adopted a rule of disclosure, not as a matter of constitutional compulsion but of "rudimentary fairness." 55 N.J. at 144. The rule sought to resolve problems created by the danger of divulging unsuitable material. The Court said:
Thus the presentence report may first be examined by the trial judge so that matters which will actually play no part in the sentencing process may be excluded. In this fashion irrelevances may be eliminated, confidential sources may be protected, and disclosure may be avoided of diagnostic matters which would be harmful to the defendant's rehabilitation if he were told about them. The report, as thus edited and furnished to the defendant, must of course contain in toto the presentence material which will have any bearing whatsoever on the sentencing and the trial judge must so recognize in his deliberation and determination. [55 N.J. at 144-145].
Kunz thus contemplates (1) review by the court of the presentence report, (2) deletion therefrom of any materials which are not to be disclosed to the defendant, and (3) non-consideration by the court of deleted materials. Nothing hidden from the defendant may be considered in sentencing. There is no third category, consisting of information which is too important to disregard but unsuitable to disclose to the defendant. Kunz creates no occasion for appellate review.
*118 The Parole Board solves the confidentiality problem very differently. In considering a prisoner, the Board normally has before it a variety of information. A report is submitted by the chief executive officer of the institution of incarceration containing the following:
1. The commitment order, including the sentencing court's written reasons for any sentence imposed.
2. The pre-sentence report.
3. A report on the conduct of the inmate during incarceration.
4. A complete report on the inmate's social, physical and mental condition, including any psychological or psychiatric reports requested by the Board and reports of the inmate's institutional housing, work, education and program participation.
5. An investigative report by the Bureau of Parole on the inmate's parole plans.
6. Any other information reflecting on the likelihood that the inmate will commit a crime if paroled.
7. An investigation of any outstanding detainers.
8. The inmate's actual maximum date based on current credits.
9. In the case of an inmate serving a specific term or life term, the projected work and minimum custody credit pattern as established by the classification department. N.J.A.C. 10A:71-3.7(e).
The chief executive officer furnishes a copy of the report to the prisoner when it is filed with the Board, with the exception of included information classified by the Board as confidential pursuant to N.J.A.C. 10A:71-2.1 or the rules and regulations of the Board. N.J.A.C. 10A:71-3.9(a).
N.J.A.C. 10A:71-2.1(c) treats the subject of disclosure to inmates of file contents. It says:
Inmates or parolees shall be afforded disclosure of adverse material considered at a hearing, provided such material is not classified as confidential by the Department and provided disclosure would not threaten the life or physical safety of any person, interfere with law enforcement proceedings or result in the disclosure of professional diagnostic evaluations which would adversely affect the inmate's rehabilitation or the future delivery of rehabilitative services. If disclosure is withheld, the reason for nondisclosure shall be noted in the Board's files, and such information shall be identified as confidential.
*119 The quoted language was expanded in Department of Correction Standard 281,[1] the purpose of which is to establish guidelines for maintenance of the confidentially of prisoner records. Standard 281.8 provides:
The following types of records are designated confidential:
(a) Reports which are evaluative, diagnostic or prognostic in nature furnished with a legitimate expectation of confidentiality and which, if revealed to the inmate or others, could be detrimental to the inmate or could jeopardize the safety of individuals who signed the reports, or were parties to the decisions, conclusions or statements contained therein;
(b) Information the disclosure of which could have a substantial adverse impact on the security or orderly operation of the institution;
(c) Information or reports which would invade or jeopardize privacy rights of the inmate/parolee or others;
(d) Disclosures which would jeopardize internal decision-making or policy determinations essential to the effective operation of any institution or the Department;
(e) Disciplinary and criminal investigative reports, including those from informants, disclosure of which would impede ongoing investigations, create a risk of reprisal or interfere with the security or orderly operation of the institution;
(f) Such other records as the Commissioner or Superintendents, based on their experience and exercise of judgment, believe must be kept confidential to insure maintenance of discipline and the orderly operation of the institution or Department.
In Kunz, the Supreme Court struck a balance between the competing demands of disclosure to protect accuracy and confidentiality to protect the flow of information. It directed the sentencing judge to remove from the presentence report any material unsuitable for the defendant's eyes, and trusted the judge not to consider that material in sentencing. The quoted parole regulations and guidelines take a different approach to the problem. They require the removal of any unsuitable material from the prisoner's copy of the record, but not from the file which the Board considers. Moreover, the removal is made by prison authorities, and there is no mechanism to *120 assure that they withhold in practice only those records which the regulations and guidelines contemplate, or that they do not interpret overbroadly the expansive Standard 281.8(f).
We faced the problem of disclosure of parole files almost twenty years ago in Mastriana v. N.J. Parole Board, 95 N.J. Super. 351 (App.Div. 1967). There, the prisoner appealed his denial of parole and sought disclosure of the Board's records regarding its decision. We ruled that parole is a matter of leniency or grace toward a prisoner; that the courts' role is limited to determining if the Board acted within its statutory powers, and that nothing in the statute required disclosure of the Board's records to the disappointed prisoner.[2] The Supreme Court mentioned the problem in Beckworth v. N.J. Parole Board, 62 N.J. 348 (1973). It noted that assertions of a constitutional right to notification of materials in the Board's possession had been repeatedly rejected by other courts. It did not express disapproval of those holdings, but it did not have occasion to rule on the matter. Id. at 362.
There is one recent ruling similar to Mastriana. Schuemann v. Colorado State Bd. of Adult Parole, 624 F.2d 172 (10 Cir.1980), denied habeas corpus relief to a state prisoner denied access to his parole file because access was held not to be constitutionally required under a parole statute which did not create a protectible liberty interest.
Whatever may be the case in other states, there is no doubt today that New Jersey prisoners have a protected liberty interest, rooted in the language of our parole statute, in parole release, and a resulting constitutional right to due process of law. New Jersey State Parole Board v. Byrne, 93 N.J. 192 (1983); Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d *121 668 (1979). Compare Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (due process required in parole revocation hearings); Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (due process required in probation revocation hearings); State v. Reyes, 207 N.J. Super. 126 (App.Div. 1986).
Although parole is not a constitutional right, the prisoner's liberty interest is sufficient to invoke certain procedural protections, New Jersey State Parole Board v. Byrne, 93 N.J. at 208, among which is a limited right to disclosure of prison records in parole proceedings. Prisoners in other states have been held entitled to disclosure of materials to be considered by the parole board, with some confidentiality exceptions. In Coralluzzo v. New York State Parole Bd., 566 F.2d 375 (2 Cir.1977), cert. granted, 434 U.S. 996, 98 S.Ct. 632, 54 L.Ed.2d 490 (1977), appeal dismissed, 435 U.S. 912, 98 S.Ct. 1464, 55 L.Ed.2d 503 (1978), New York prisoners were held to have a right to disclosure absent a showing of good cause for secrecy. In Franklin v. Shields, 569 F.2d 784 (4 Cir.1977), upon rehearing en banc (1978), cert. den., 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978), Virginia prisoners were held entitled to access to their parole files, "unless such access threatens prison security or poses harm to someone." 569 F.2d at 794. The parole board was directed to establish procedures to implement the decision. In Williams v. Missouri Bd. of Probation and Parole, 661 F.2d 697 (8 Cir.1981), cert. den., 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982), Missouri prisoners were held entitled to access to their parole files, and the matter was remanded to the District Court to develop guidelines for the parole board which would not abrogate the state's "strong and legitimate interests in preserving the confidentiality of sources of information * * * and in maintaining security and discipline within its institutions." 661 F.2d at 700. In Tasker v. Mohn, 165 W. Va. 55, 267 S.E.2d 183 (Sup.Ct. 1980), a rule of disclosure was adopted for West Virginia prisoners with an undefined exception for security-threatening documents. See also Murphy *122 v. Indiana Parole Board, 272 Ind. 200, 397 N.E.2d 259, 264 (Sup.Ct. 1979).
Rules of limited disclosure with confidentiality exceptions have developed in related contexts which create concern for both confrontation and confidentiality. Avant v. Clifford, 67 N.J. 496 (1975), involved constitutional challenges to New Jersey State Prison disciplinary procedures. Provisions which passed muster included ones permitting the hearing committee not only to refuse to call a witness where there was a risk of reprisal or of undermining institutional authority, but also to refuse to disclose evidence where the committee deems confrontation and cross-examination unnecessary for an adequate presentation of the evidence. See also, Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In parole revocation proceedings, the parolee's constitutional right to confront and cross-examine witnesses is qualified, and it gives way to a well-grounded specific finding by the hearing officer of good cause for not allowing confrontation. Morrissey v. Brewer, 408 U.S. at 488-489, 92 S.Ct. at 2604, 33 L.Ed.2d at 498-499.
Time and the development of the law have eroded our holding in Mastriana v. N.J. Parole Bd., supra, and it can no longer be considered the law. A Parole Board rule or policy flatly prohibiting prisoner access to parole files would no longer be sustainable. However, there is no jurisdiction to our knowledge which has adopted a flat rule of disclosure. Every reported case preserves an exception for necessary confidentiality, plainly because of the widely recognized security and discipline problems encountered in the operation of a penal institution, because of the fear of loss of valuable information from the public and from inmates and prison employees who must contemplate continued close contact with the prisoner, and because of the fear of the revelation of diagnostic materials which may interfere with therapeutic goals.
*123 In part, these concerns echo the arguments against disclosure of presentence reports considered in State v. Kunz, 55 N.J. at 132-133. They gain weight, however, from the prison setting to which they apply. Prisoners have all committed crimes serious enough to require incarceration. Many of them, like Thompson, have done so repeatedly, and have thus shown that their suitability for early parole release should not be easily assumed. Many of them have shown emotional instability, the capacity for violence, and the inability to deal with frustration and disappointment. Housing and managing a population of such persons is an especially difficult exercise in governance. The danger of reprisals is real and serious. A decision predicting the likelihood of recidivism depends in significant part on an evaluation of the prisoner's behavior while incarcerated. That behavior is best known and most accurately reportable to the Parole Board by persons in frequent institutional contact with the prisoner whose contact will continue if parole is denied.
Due process is a flexible and dynamic concept. It calls for such procedural protections as the particular situation demands. New Jersey Parole Board v. Byrne, 93 N.J. at 209. The safe operation of a prison must be taken into account in determining the extent of legal process due a prisoner in the consideration of his parole release. Disclosures threatening to institutional security must be avoided. They may include evaluations and anonymous reports of fellow prisoners and of custodial staff members. Disclosure of therapeutic matters also should be avoided if it would interfere with prisoner rehabilitation and relationships with therapists. Contributions to the parole file solicited by the Board from crime victims may, if disclosed, discourage people to come forward who have already suffered loss and, perhaps, injury at the hands of the prisoner. See, N.J.S.A. 30:4-123.54b(2); In re Hawley, 98 N.J. 108, 114 (1984).
On the other hand, prisoners are entitled not only to reasonable standards implementing a confidentiality exception which *124 is no broader than its lawful purpose requires, but also to good faith determinations, made pursuant to those standards, whether file materials are to be withheld. We can decide the facial validity of the standards upon an examination of their language. We are satisfied that N.J.A.C. 10A:71-2.1c and Department of Corrections Standard 281.8, considered together, create and define a reasonable confidentiality exception no broader than the legitimate needs require.
How to deal with the propriety of individual determinations to withhold file documents is more difficult. Decisions to withhold are made administratively in the institutions of incarceration. They are not made by the Parole Board or by personnel directly responsible to it. The Parole Board does not have the occasion to review the validity of decisions to withhold or, apparently, the authority to correct erroneous decisions.[3]
There are a number of ways judicial review of decisions to withhold file materials could be approached. In choosing among them, we write, as far as we know, on a clean slate. One approach would be to deny review altogether. Because prison staff decisions to withhold file materials can bear so significantly on the parole determination, we believe that due process and fundamental fairness require a mechanism to permit review of genuine cases of inappropriate and prejudicial nondisclosure.
Another approach might be to follow the Kunz model for dealing with presentence report materials unsuitable for defendant's eyes: remove them not only from defendant's copy of the report but also from the court's sentencing consideration. We could require that the materials administratively redacted from the prisoner's copy of the file also be removed from the *125 Board's. The seductive symmetry of such a solution takes insufficient account of the need to afford the Board every relevant document that will inform its sensitive decision, even if unsuitable to disclose to the prisoner.
A third approach would be to leave present administrative practice undisturbed but, on appeal from adverse parole decisions, for us to review in camera all materials allegedly withheld improperly from the prisoner but reviewed by the Parole Board. The result would be to encourage appeals solely to obtain such review and to require this court to examine on demand a great number of parole files without the slightest assurance that there is a well-grounded complaint.
A fourth approach would be for us to grant in camera review on appeal only where the prisoner demonstrates a well-grounded complaint that materials were improperly withheld which could have affected the outcome. It is difficult to envision how a prisoner could ever make such a case in a system whose purpose is to prevent him from knowing anything about the materials which were removed from the file. See, e.g., Stanley v. Dale, 298 S.E.2d 225 (W. Va.Sup.Ct. 1982).
A fifth approach might be that suggested by the Attorney General and rejected by the Public Defender. The suggestion was that the withheld materials be shown the Public Defender, but not the prisoner, so that only well-grounded assertions of improper nondisclosure would be made by counsel on appeal. The prisoner would not have access to the materials unless this court so ruled after in camera review. The Public Defender protests that counsel cannot effectively evaluate materials purporting to report on the client without consulting the client about them. We believe that to be a sufficient objection to the idea. We need not deal with the Public Defender's second objection, that the suggestion would interfere with the attorney-client relationship.
Each of these five approaches has a fault sufficiently great to bar its use. We adopt an approach which may add to the *126 Parole Board's burdens, but will sufficiently protect the prisoner's due process rights with the least intrusion on the Department of Correction's legitimate concern for confidentiality.
When any document in a parole file is administratively removed from the prisoner's copy of the file, N.J.A.C. 10A:71-2.1(c) requires the document to be identified as confidential and the reason for nondisclosure to be noted in the Board's file. We will require the Board, after making a parole decision adverse to the prisoner, to state in its decision whether any document marked confidential played any substantial role in producing the adverse decision, and, if so, to record in its file which of them did so. In the event of an appeal, the Attorney General will include in the Statement of Items Comprising the Record the Board's statement on the matter, which may be worded in such a way as to effectively preserve the confidentiality of the withheld materials.
If the Board states that none of the confidential materials has played any substantial role in producing the adverse decision, that will be the end of it. We will have no doubt of the Board's good faith in making such a statement, and we will not review materials which the Board says did not matter.
If the Board states that confidential materials played a substantial role in producing the adverse decision in a case appealed to this court, we will undertake to review the materials and determine the propriety of the decision to withhold them. If we conclude that nondisclosure was improper, the remedy might be a remand for reconsideration without the withheld materials, a remand for reconsideration after disclosure to the prisoner of the withheld materials, or, perhaps, an exercise of our original jurisdiction. The remedy will fit the needs of the individual case.
In the present case, there is nothing in the Parole Board's explanation of its decision regarding Thompson to suggest that withheld materials played a substantial role. *127 Thompson does not argue before us that the decision is not explainable by the information openly before the Board. In these circumstances, and in view of the purposelessness of trying to unravel the past, we affirm. We do so with knowledge that the Board will conduct an annual review regarding Thompson in a matter of months, and that it will do so in accordance with the views we have here expressed.
Affirmed.
NOTES
[1] We are advised that Standard 281 was adopted before March 8, 1981, and amended in significant respects after that date, including the formulation of Standard 28.1.8. No argument has been made before us relating to the impact of the Legislative Oversight Act, L. 1981, c. 27, see N.J. Department of Corrections v. McNeil, 209 N.J. Super. 120 (App.Div. 1986), or the effect of N.J. Const., Art. 5, § 4, Par. 6.
[2] The court also held that a prisoner was not entitled to a statement of reasons for denial of parole. The Supreme Court ruled otherwise in Monks v. N.J. State Parole Board, 58 N.J. 238 (1971).
[3] We note that the regulations and guidelines, and the nondisclosure decision by Department of Corrections personnel are challenged before us on an appeal only from a Parole Board decision to deny parole. The Attorney General, who acts as counsel for the Department, does not raise this as a procedural problem, and we see no need to do so.