SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**In the Matter of Petition for Rulemaking to Amend N.J.A.C. 10A:71-3.11**
**(A-48/49-24) (089529)**

**Argued September 8, 2025 -- Decided January 14, 2026**

**CHIEF JUSTICE RABNER, writing for a unanimous Court.**

In this appeal, the Court considers the denial by the State Parole Board of a petition filed by the Office of the Public Defender (OPD), which asked the Board to revise N.J.A.C. 10A:71-2.2 (Rule 2.2) to allow "individuals seeking parole to access psychological reports and other medical records that the Parole Board relies upon in release decisions." The OPD submitted that Rule 2.2 restricts an inmate's access to their mental health records and deviates from the due process requirements set forth in Thompson v. State Parole Board, 210 N.J. Super. 107 (App. Div. 1986).

The Parole Board denied the OPD's petition. The Board represents that, in practice, the agency follows constitutional standards when it decides whether individual requests for records should be granted. The Appellate Division upheld the Board's determination. The Court granted the OPD's petition for certification limited to its request to amend Rule 2.2. 260 N.J. 343 (2025).

**HELD:** There are valid reasons not to disclose records in particular cases to ensure safety and security at correctional institutions and to avoid interfering with an inmate's rehabilitation, among other concerns. See Thompson, 210 N.J. Super. at 123. But because the plain language of N.J.A.C. 10A:71-2.2 bars disclosure in all cases, it violates settled constitutional principles.

1. The United States Supreme Court has held that when state law grants a sufficient expectancy of parole, inmates are entitled to some measure of constitutional protection with respect to parole decisions. In Thompson, the Appellate Division found "a limited right to disclosure of prison records in parole proceedings." Id. at 121. At the same time, the court recognized the need for confidentiality in certain respects in the prison setting. Id. at 122-23. Based on those principles, the Appellate Division found the standard in place at the time was facially valid. Id. at 124. It imposed a policy requiring the Board to note in its files whether any document was identified as confidential and "to state in its decision whether any document marked confidential played any substantial role in producing [an] adverse [parole] decision," so that such documents could be reviewed on appeal. Id. at 126. (pp. 7-9)

1

2.  The regulation in effect at the time of <u>Thompson</u> permitted disclosure of inmates' psychological and mental health records "provided disclosure would not threaten the life or physical safety of any person, interfere with law enforcement proceedings or result in the disclosure of professional diagnostic evaluations which would adversely affect the inmate's rehabilitation or the future delivery of rehabilitative services." <u>See</u> <u>id.</u> at 118 (quoting N.J.A.C. 10A:71-2.1(c) (1986)).  The current regulation, as amended in 2012, does not contain that language.  <u>See</u> N.J.A.C. 10A:71-2.2.  Instead, it states that "written materials concerning an offender's medical, psychiatric or psychological history, diagnosis, treatment or evaluation" "shall be deemed confidential," <u>id.</u> at (a)(1), and that "[i]nmates or parolees shall be afforded disclosure of adverse material or information considered at a hearing, provided such material is not classified as confidential by the Board or the Department," <u>id.</u> at (c).  (pp. 10-11)

3.  Because, under the current Rule 2.2, an inmate or parolee's medical, psychiatric, and psychological records are "deemed confidential" in subsection (a), they cannot be disclosed under subsection (c).  As a result, health records that are adverse to a parole applicant but considered by the Board when it decides whether to grant an applicant parole cannot be revealed to the applicant under the regulation's plain terms.  Rule 2.2's categorical bar against disclosure runs counter to the principles of due process set forth in <u>Thompson</u>, which the Board does not challenge.  (pp. 13-14)

4.  The Parole Board's argument that it reads Rule 2.2 in tandem with certain regulations adopted by the Department of Corrections (DOC) does not save Rule 2.2.  The regulations do not cross-reference each other, and it is not clear that reading Rule 2.2 together with the DOC regulations provides the same level of access to mental health records required in <u>Thompson</u>.  The Court also rejects the Board's argument that it discloses records when ordered to do so upon appellate review.  There is a basic, overriding problem with such practice-based justifications:  if they were accepted, Rule 2.2 would remain intact even though its plain language bars the release of all medical, psychiatric, and psychological records.  Anyone reading Rule 2.2 is entitled to rely on its terms.  And those terms make clear that medical, psychiatric, and psychological records are confidential and will not be disclosed.  A rule that is unconstitutional on its face cannot stand based on representations about how it is applied in practice.  The Court remands the matter to the Parole Board to propose and adopt a new regulation consistent with the rulemaking process.  The principles outlined in <u>Thompson</u> remain in place during that process and after it is completed. (pp. 14-20)

**REVERSED.  REMANDED to the Parole Board.**

**JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in CHIEF JUSTICE RABNER's opinion.**

2

SUPREME COURT OF NEW JERSEY

A-48/49 September Term 2024

089529

---

In the Matter of Petition
for Rulemaking to Amend
N.J.A.C. 10A:71-3.11.

---

In the Matter of Petition
for Rulemaking to Amend
N.J.A.C. 10A:71-3.11,
N.J.A.C. 10A:71-2.2, and
N.J.A.C. 10A:71-3.20.

---

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| September 8, 2025 | January 14, 2026 |

---

Michael R. Noveck, Deputy Public Defender, argued the
cause for appellants Ronald Robbins, Joseph E. Krakora,
and the New Jersey Office of the Public Defender
(Jennifer N. Sellitti, Public Defender, attorney; Michael
R. Noveck, of counsel and on the briefs).

Robert J. McGuire, Deputy Attorney General, argued the
cause for respondent New Jersey State Parole Board
(Matthew J. Platkin, Attorney General, attorney; Melissa
H. Raksa, Assistant Attorney General, of counsel, and
Christopher C. Josephson, on the brief).

Jennifer B. Condon argued the cause for amicus curiae
Center for Social Justice at Seton Hall University School
of Law (Center for Social Justice at Seton Hall

University School of Law, attorneys; Jennifer B. Condon, on the brief).

CHIEF JUSTICE RABNER delivered the opinion of the Court.

When the State Parole Board evaluates an inmate's request for parole, the Board can review and consider the person's medical, psychiatric, and psychological records. The Office of the Public Defender (OPD) contends that Parole Board regulations prevent inmates from accessing those same records in connection with parole proceedings, contrary to their due process rights.

This appeal involves the OPD's petition for rulemaking before the Parole Board, in which the OPD proposed changes to the relevant regulation, N.J.A.C. 10A:71-2.2 (Rule 2.2). The Board declined to amend the rule. Among other reasons, the Board represents that, in practice, the agency follows constitutional standards when it decides whether individual requests for records should be granted. The Appellate Division upheld the Board's determination.

We recognize there are valid reasons not to disclose records in particular cases to ensure safety and security at correctional institutions and to avoid interfering with an inmate's rehabilitation, among other concerns. See Thompson v. State Parole Bd., 210 N.J. Super. 107, 123 (App. Div. 1986). But because the plain language of Rule 2.2 bars disclosure in all cases, we find that

2

it violates settled constitutional principles.  We therefore reverse and remand the matter to the Parole Board to promulgate a new regulation.

## I.

## A.

On September 8, 2022, the OPD petitioned the State Parole Board to modify several of its regulations.  Among others, the OPD asked the Board to revise Rule 2.2 to allow "individuals seeking parole to access psychological reports and other medical records that the Parole Board relies upon in release decisions."  Two other proposed revisions are not part of this appeal.

The OPD submitted that Rule 2.2 restricts an inmate's access to their mental health records and deviates from the due process requirements set forth in Thompson.  We discuss Thompson in greater detail below.  In short, the opinion reviewed an inmate's liberty interest in parole eligibility decisions, recognized an inmate's "limited right to disclosure of prison records in parole proceedings," acknowledged that certain disclosures should be avoided, noted that confidential documents removed from a parole file must be identified, and directed the Board to state in its decision "whether any document marked confidential played any substantial role in producing the adverse decision" to deny parole.  Id. at 121-24, 126.

The OPD's petition proposed revised language for subsection 2.2(c) to align the regulation with Thompson.  The proposed additional text is underlined; proposed deletions appear in brackets:

> Inmates or parolees shall be afforded disclosure of [adverse] all material or information considered at a hearing, [provided such material is not classified as confidential by the Board or the Department] unless the Board concludes, on the basis of information provided by the appropriate Board or Department staff member, that disclosure to the inmate or parolee would threaten the life or physical safety of any person, interfere with law enforcement proceedings, or result in the disclosure of professional diagnostic evaluations which would adversely affect the inmate's rehabilitation or the future delivery of rehabilitative services.  If disclosure is withheld, the reason for nondisclosure shall be noted in the Board's files, and the statement of the Board or Department staff member describing the basis for confidentiality shall be included in the Board's files. [and] [s]Such material or information shall be identified as confidential.

The Parole Board denied the OPD's petition on November 17, 2022. The Board noted that "[t]he Department of Corrections at N.J.A.C. 10A:22-2.7(d) provides for the availability and/or confidentiality of an inmate's mental health records"; that "the basis for the withholding of a mental health evaluation from the incarcerated person" is noted in the person's file and "is available for review by the Appellate Division"; and that the Board releases evaluations "as directed pursuant to a court order" or a "consent protective order/agreement."  For those reasons, the Board stated it "believes its existing

4

regulations comply with <u>Thompson</u> and in practice the procedures in <u>Thompson</u> have been followed."

B.

The OPD appealed, and the Appellate Division affirmed the Board's decision. The OPD presented two principal arguments. It asserted that the Board's regulations amounted to "a per se rule of nondisclosure that violates due process." The OPD also faulted the Board for applying Rule 2.2 in a way that withheld all psychological evaluations without conducting the case-by-case review <u>Thompson</u> required.

The Appellate Division reaffirmed <u>Thompson</u>'s admonition that "[a] Parole Board rule or policy flatly prohibiting prisoner access to parole files would no longer be sustainable." (citing <u>Thompson</u>, 210 N.J. Super. at 122). The appellate court's analysis focused heavily on the "limited record" that did "not permit [it] to scrutinize how the Board exercises its discretion." The court therefore deferred "to the Board's discretion to deny [the] rulemaking petition." At the same time, the court stressed that "the procedural due process requirements set forth in <u>Thompson</u> must be complied with in all cases regardless of whether those safeguards are explicitly codified in regulatory text."

5

C.

We granted the OPD's petition for certification limited to its request to amend Rule 2.2. 260 N.J. 343 (2025). The Center for Social Justice at Seton Hall University School of Law (Center) participated as a friend of the court before the Appellate Division and has continued to do so here. R. 1:13-9(d)(1).

II.

The OPD submits that the Appellate Division misinterpreted the plain language of Rule 2.2. It contends that individuals seeking parole can never access the Board's psychological reports based on the text of the regulation. According to the OPD, the "current per se rule" therefore violates the due process protections outlined in Thompson. The OPD maintains that neither a related Department of Corrections regulation, nor the possibility of appellate review or the use of consent protective agreements can save Rule 2.2.

The Center supports the OPD's position. The Center contends that Rule 2.2 sanctions the per se denial of psychological and medical records to individuals seeking parole. As a result, the Center maintains that the Rule violates the requirements of due process.

The Parole Board argues that Rule 2.2, "when read in conjunction with [a] related Department of Corrections regulation," protects against "the due

process concerns" stated in Thompson. In addition, the Board submits that, "in practice, cases turning on [Rule 2.2] have followed the procedures outlined in Thompson." The Board also points to the Appellate Division's conclusion that the record lacks evidence the Board withheld relevant confidential information. Because the Rule does not offend due process, the Board contends, its denial of the rulemaking petition should be upheld.

## III.

Inmates have "no 'constitutional or inherent right' to parole." Vitek v. Jones, 445 U.S. 480, 488 (1980) (quoting Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979)). When state law, however, grants "a sufficient expectancy of parole," inmates are "entitle[d] . . . to some measure of constitutional protection with respect to parole decisions." Id. at 489 (citing Greenholtz, 442 U.S. at 12).

In accordance with those principles, this Court has, in fact, held that New Jersey's Parole Act entitles inmates "to some measure of constitutional protection with respect to parole [eligibility] decisions." State Parole Bd. v. Byrne, 93 N.J. 192, 203 (1983) (alteration in original) (quoting Vitek, 445 U.S. at 489)). Among those protections, the Appellate Division held in Thompson, is "a limited right to disclosure of prison records in parole proceedings." 210 N.J. Super. at 121.

7

In the underlying case in <u>Thompson</u>, the Parole Board considered documents in an inmate's parole file, including a psychological report, but did not disclose them to the inmate before or after his parole hearing. <u>Id.</u> at 116. The Board denied parole, and the inmate sought access to the documents for his appeal. <u>Ibid.</u>

The Appellate Division observed that any policy that "flatly prohibit[ed] prisoner access to parole files would . . . [not] be sustainable." <u>Id.</u> at 122. At the same time, the court recognized the need for confidentiality in certain respects in the prison setting. <u>Id.</u> at 122-23. The court also noted that due process is "flexible" and "calls for such procedural protections as the particular situation demands." <u>Id.</u> at 123 (citing <u>Byrne</u>, 93 N.J. at 209). With that in mind, <u>Thompson</u> acknowledged certain limitations on the release of parole records:

> Disclosures threatening to institutional security must be avoided. They may include evaluations and anonymous reports of fellow prisoners and of custodial staff members. Disclosure of therapeutic matters also should be avoided if it would interfere with prisoner rehabilitation and relationships with therapists. Contributions to the parole file solicited by the Board from crime victims may, if disclosed, discourage people to come forward . . . .
>
> [<u>Ibid.</u>]

"On the other hand," the Appellate Division observed, "prisoners are entitled not only to reasonable standards implementing a confidentiality exception which is no broader than its lawful purpose requires, but also to good faith determinations, made pursuant to those standards, whether file materials are to be withheld." Id. at 123-24. Based on those principles, the Appellate Division found the standard in place at the time was facially valid. Id. at 124 (assessing, in part, N.J.A.C. 10A:71-2.1(c) (1986)).

The appellate court went on to consider how best to approach "individual determinations to withhold file documents." Ibid. It considered multiple approaches and settled on the following:

> When any document in a parole file is administratively removed from the prisoner's copy of the file, N.J.A.C. 10A:71-2.1(c) requires the document to be identified as confidential and the reason for nondisclosure to be noted in the Board's file. We will require the Board, after making a parole decision adverse to the prisoner, to state in its decision whether any document marked confidential played any substantial role in producing the adverse decision, and, if so, to record in its file which of them did so.
>
> [Id. at 126.]

Only if the "confidential materials played a substantial role in producing the adverse decision" would the court review the documents on appeal and address whether "nondisclosure was improper." Ibid.

9

B.

The regulation in effect at the time of the <u>Thompson</u> decision read as follows:

> Inmates or parolees shall be afforded disclosure of adverse material considered at a hearing, provided such material is not classified as confidential by the Department and <u>provided disclosure would not threaten the life or physical safety of any person, interfere with law enforcement proceedings or result in the disclosure of professional diagnostic evaluations which would adversely affect the inmate's rehabilitation or the future delivery of rehabilitative services</u>. If disclosure is withheld, the reason for nondisclosure shall be noted in the Board's files, and such information shall be identified as confidential.
>
> [See <u>Thompson</u>, 210 N.J. Super. at 118 (emphasis added) (quoting N.J.A.C. 10A:71-2.1(c) (1986)).]

That text was adopted in 1980. <u>See</u> 12 N.J.R. 420(b) (July 10, 1980); 12 N.J.R. 538(a) (Sept. 4, 1980).

The regulations were amended in 2012. Among other changes, the language highlighted above -- which limited disclosure under the circumstances described in <u>Thompson</u> -- was removed, and certain sections were renumbered. 43 N.J.R. 2144(b) (Aug. 15, 2011); 44 N.J.R. 270(a) (Feb. 6, 2012).

The current regulation, as amended in 2012, appears at N.J.A.C. 10A:71-2.2. Subsection (c) of the rule reads as follows:

10

Inmates or parolees shall be afforded disclosure of adverse material or information considered at a hearing, provided such material is not classified as confidential by the Board or the Department. If disclosure is withheld, the reason for nondisclosure shall be noted in the Board's files, and such material or information shall be identified as confidential.

[(emphasis added).]

Subsection (a) precedes the above language and states that

[i]n addition to records designated as confidential pursuant to the provisions of N.J.S.A. 47:1A-1 et seq., any other law, rule promulgated under the authority of any statute or Executive Order of the Governor, resolution of both houses of the Legislature, Executive Order of the Governor, Rules of Court, or any Federal law, Federal regulation, or Federal order, the following records shall be deemed confidential and shall not be subject to public access:

1. Information, files, documents, reports, records or other written materials concerning an offender's medical, psychiatric or psychological history, diagnosis, treatment or evaluation[.]

[(emphases added).]

We now examine whether the current version of Rule 2.2, which provides inmates with more limited access to their records than the version Thompson approved, satisfies constitutional standards.

11

# IV.

Judicial review of the denial of a rulemaking petition is ordinarily limited to determine whether an agency's action was arbitrary, capricious, or unreasonable. In re Amendment of N.J.A.C. 8:31B-3.31, 119 N.J. 531, 543-44 (1990).

The Parole Act empowers the State Parole Board to "promulgate reasonable rules and regulations" to "discharge . . . its responsibilities." N.J.S.A. 30:4-123.48(d). We typically "defer to an agency's interpretation of . . . [an] implementing regulation[] within the sphere of the agency's authority." In re Election L. Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010). We accord agencies that deference because of their specialized expertise in implementing laws they are responsible to administer. N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 549 (2012).

Whether the current regulations violate an inmate or parolee's due process rights under Thompson presents a straightforward question of constitutional law. As a result, we are not bound by the agency's determination and review it de novo. In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 17 (2020); Saccone v. Bd. of Trs., PFRS, 219 N.J. 369, 380 (2014).

12

A.

The answer to the question before us can be found in the language of Rule 2.2. As highlighted above, subsection (a) expressly labels various kinds of records as "confidential." N.J.A.C. 10A:71-2.2(a). They include "an offender's medical, psychiatric or psychological history, diagnosis, treatment or evaluation." Id. at -2.2(a)(1). Although subsection (c) declares that adverse material considered at a hearing "shall be afforded disclosure" to inmates and parolees, the section contains a critical caveat: "provided such material is not classified as confidential by the Board or the Department" of Corrections. Id. at -2.2(c).

In essence, then, subsection (c)'s promise of disclosure is unwound by subsection (a). Because an inmate or parolee's medical, psychiatric, and psychological records are "deemed confidential" in subsection (a), they cannot be disclosed under subsection (c). As a result, health records that are adverse to a parole applicant but considered by the Board when it decides whether to grant an applicant parole cannot be revealed to the applicant under the regulation's plain terms.

Rule 2.2 therefore runs contrary to established due process protections. As noted earlier, inmates have a "liberty interest in freedom at the end of the parole process." Byrne, 93 N.J. at 208. And the Parole Act invokes

13

constitutional protections "with respect to parole [eligibility] decisions." Id. at 203 (alteration in original) (quoting Vitek, 445 U.S. at 489).

With that in mind, Thompson addressed an inmate's access to "records in parole proceedings." 210 N.J. Super. at 121. The decision outlined relevant considerations relating to the release of parole records as well as a process to be followed when documents are marked confidential and administratively removed from an inmate's copy of the file. Id. at 123, 126. That approach necessarily calls for the documents to be reviewed individually.

The current regulation instead treats all medical, psychiatric, and psychological records as confidential. See N.J.A.C. 10A:71-2.2(a)(1). In doing so, the regulation imposes a categorical bar against disclosure of documents that the Board can -- and in some cases does -- rely on during the parole process. That approach runs counter to the principles of due process set forth in Thompson, which the Board does not challenge.

B.

The Board offered several reasons why it declined the OPD's rulemaking petition on this issue. None of them save the current regulation.

First, the Board pointed to regulations adopted by the Department of Corrections (DOC), not the Parole Board, and argued the two sets of rules should be -- and in practice are -- read in tandem. Under N.J.A.C. 10A:22-

14

2.7(d) (subsection 2.7(d)), inmates are entitled to receive "[c]opies of mental health records related to routine mental health care, treatment and counseling." Mental health records "that, if disclosed, would compromise the safety of the inmate or others, or the security or orderly operation of the correctional facility, shall not be provided to inmates without court order or consent protective agreement." Ibid.

Although regulations of the Parole Board and the Department of Corrections address similar issues, they reflect different judgments. The Parole Board rule in question, Rule 2.2, does not incorporate or cross-reference the DOC rule cited above, or vice versa. Rule 2.2, in fact, recognizes that either entity may classify adverse materials as confidential. See N.J.A.C. 10A:71-2.2(c) (Parole Board regulation allowing for disclosure "provided such material is not classified as confidential by the Board or the Department" (emphasis added)). And in this matter, the Parole Board's restrictive regulation renders all medical, psychiatric, and psychological records confidential, id. at -2.2(a), even though the Board represents it does not follow that practice.

We note as well that the DOC regulations under subsection 2.7(d) provide for disclosure of "routine" mental health records. But other mental health records -- copies of "evaluative or administrative assessment reports"

15

"generated by professional mental health staff" -- "shall not be provided to inmates without court order or consent protective agreement." N.J.A.C. 10A:22-2.7(d).[1] It is therefore not clear that reading Rule 2.2 and subsection 2.7(d) together provides the same level of access to mental health records required in Thompson.

Nor can we tell from the record whether each document in a Parole Board file, including any created specifically for a parole hearing, can be found in a Corrections file and would theoretically be available for disclosure under subsection 2.7(d). See N.J.A.C. 10A:71-3.7(i) (noting that the Board or a Board panel may require an "inmate to undergo an in-depth pre-parole psychological evaluation conducted by a psychologist" "[a]t any time while an inmate is committed" and "as often as it deems necessary").

Second, the Board noted it denied the petition for rulemaking because its "basis for the withholding of a mental health evaluation from the incarcerated

_____

[1] Subsection 2.7(d) separately lists a second category of records that shall not be disclosed without a court order or consent agreement: records whose release would compromise institutional security. The Board represented at oral argument that, although the regulation identifies the two categories as distinct from one another, the Board combines them in practice. In other words, the Board represents that evaluative or administrative assessment reports are withheld only if their release would compromise institutional security. The text of subsection 2.7(d), however, does not require that approach.

16

person . . . is available for review by the Appellate Division." The Board also explained that it "does release mental health evaluations as directed pursuant to a court order" and "a consent protective order/agreement."

Our confidence that the Board and its counsel will follow court orders issued on appeal does not resolve the current challenge. The question is whether documents that inmates are entitled to review are disclosed in a timely manner during parole proceedings, not whether the Board is prepared to honor individual court orders that compel disclosure on appeal. Agencies must abide by settled legal principles -- in this case, the "limited right" that Thompson provides "to disclosure of prison records in parole proceedings." 210 N.J. Super. at 121. They may not wait for the results of an individual appeal to comply. In that regard, we are concerned -- just as the Appellate Division was -- that no advocate could recall a single instance when the Board granted disclosure without a court order issued after parole had been denied.

In addition, a "consent protective order/agreement" permits counsel to review records. But it does not allow attorneys to discuss the contents of documents with their clients. Because that might prevent counsel from "effectively evaluat[ing the] materials," the Appellate Division in Thompson previously rejected the proposed approach. Id. at 125.

For context, we note that inmates and parolees do not have a right to counsel at parole hearings. See Byrne, 93 N.J. at 211 (finding the process required for parole proceedings does not implicate "counsel issues"); Puchalski v. State Parole Bd., 104 N.J. Super. 294, 300-01 (App. Div. 1969) (finding no right to counsel in proceedings to grant parole under the 1948 Parole Act); see also N.J. State Parole Board, The Parole Book: A Handbook on Parole Procedures for Adult and Young Adult Offenders, at 16 (7th ed. 2023), https://www.nj.gov/parole/docs/Parole%20Handbook%20-%20Seventh%20Edition%20Updated%20Final%20Handbook.pdf (stating attorneys cannot be present during parole hearings but may submit letters to the Board panel). As a practical matter, then, it is unlikely that consent or protective agreements would be involved in most parole proceedings. We recognize there may be other situations when such orders and agreements are appropriate to protect confidentiality concerns.

Beyond the above specific concerns, there is a basic, overriding problem with the justifications the Board presents. If they were accepted, Rule 2.2 would remain intact even though its plain language bars the release of all medical, psychiatric, and psychological records.

Anyone reading Rule 2.2 is entitled to rely on its terms. And those terms make clear that medical, psychiatric, and psychological records are

18

confidential and will not be disclosed.  It is not possible to know how many inmates and parolees might halt their efforts to obtain mental health records after reading the language of the rule.  As the Public Defender and the Center point out, most have no attorney to assist them in the parole process.

Finally, we do not find that Rule 2.2(a), as currently written, identifies only categories of records not subject to release under OPRA.  The Parole Board notes that, after OPRA was enacted in 2002, it proposed new rules.  They provided that "the following records shall not be considered government records <u>subject to public access pursuant to [OPRA]</u>:  . . . Information relating to medical, psychiatric or psychological history, diagnosis, treatment or evaluation."  34 N.J.R. 2187(a) (July 1, 2002) (proposed as N.J.A.C. 10A:71-2.8(a)(1)(i) (emphasis added)).

The language the Board proposed would have made clear that its regulation was limited to OPRA responses, not requests from inmates.  The proposal, however, was not adopted.  <u>See</u> 43 N.J.R. 2144(b) (Aug. 15, 2011).  The current text of Rule 2.2(a) instead contains broader limiting language -- "<u>the following records shall be deemed confidential</u> and shall not be subject to public access."  N.J.A.C. 10A:71-2.2(a) (emphasis added).

V.

As set forth above, inmates and parolees have a limited right to the disclosure of records in their parole files under Thompson. There are legitimate reasons to withhold records if disclosing them would threaten a person's safety or the security of an institution, or would interfere with rehabilitation, among other concerns. To make that determination, an agency must review relevant documents on a case-by-case basis.

Because Rule 2.2 bars the disclosure of all medical, psychiatric, and psychological records, it runs afoul of the due process requirements stated in Thompson. A rule that is unconstitutional on its face cannot stand based on representations about how it is applied in practice. We therefore reverse the judgment of the Appellate Division. We also remand the matter to the Parole Board to propose and adopt a new regulation consistent with the rulemaking process. The principles outlined in Thompson, of course, remain in place during that process and after it is completed.

JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in CHIEF JUSTICE RABNER's opinion.