104 N.J. Super. 294 (1969)
250 A.2d 19
ANTHONY M. PUCHALSKI, PLAINTIFF-APPELLANT,
v.
NEW JERSEY STATE PAROLE BOARD, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 13, 1969.
Decided January 29, 1969.
*295 Before Judges GAULKIN, COLLESTER and LABRECQUE.
Mr. Henry A. Hill, Jr. argued the cause for appellant.
Mr. Eugene T. Urbaniak, Deputy Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General, attorney).
GAULKIN, S.J.A.D.
This case raises the question whether Puchalski was entitled to the assignment of counsel at public expense to assist him in making a plea for parole. We hold he was not.
*296 Puchalski is presently serving a sentence of 29 to 30 years at New Jersey State Prison for second degree murder. Sometime prior to December 1, 1967 he was notified that he was scheduled to appear at a meeting with the Parole Board in March 1968, to be considered for parole. On December 1, 1967 he wrote to the chairman of the Parole Board requesting that an attorney be assigned "to represent my interests at the time I appear before the Board" and "to appear on the date in question." A similar letter was directed to the Public Defender. He was advised by letters that neither organization would provide counsel.
On January 9, 1968 an application was made to the Public Defender requesting that the Public Defender provide him with the limited representation allowed by N.J.S.A. 30:4-123.25  namely, consultation with counsel prior to the parole hearing and submission by counsel of a brief or other legal argument on his behalf to the Parole Board. It is stipulated that an application for the assignment of counsel also was submitted, pursuant to R.R. 1:12-9, and that he is indigent. On January 30, 1968 the Public Defender denied this request on the grounds that "the statute establishing the Office of the Public Defender does not authorize representation * * * of indigent defendants in connection with any proceedings involving the State Parole Board."
Thereafter Puchalski appeared before the Parole Board and parole was denied. His case was rescheduled for hearing in February 1970.
Puchalski does not contend that there is at present statutory or rule authority for assignment of counsel by the Parole Board or by any other agency to assist prisoners at parole hearings. Nor does he appear to contend that there is a constitutional or statutory right to be represented by counsel at a parole hearing. Rather, his sole contention appears to be that, since N.J.S.A. 30:4-123.25 affords a prisoner "the right to consult legal counsel of his own selection" prior to a parole hearing, the failure of the State to appoint counsel for an indigent prisoner for at least this *297 limited purpose constitutes a denial of equal protection of the laws and due process of law under the Fourteenth Amendment.
In a series of cases dealing with the rights of indigent defendants on appeal, the United States Supreme Court has held that the state must supply a transcript without charge to indigent defendants, where such transcript is needed for adequate and effective appellate review and is available to those who pay a fee, Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); that such transcripts must be made available to indigents, without the intervention of a public defender, even on appeal of collateral proceedings such as denial of a writ of error coram nobis, Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892, 768 (1963); Gardner v. California, 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d, 601 (1969); that filing fees may not be imposed where they would deny to the indigent criminal defendant review available to those who can pay, either by way of direct appeal, Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959), or by way of collateral attack, Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961), and that where a first appeal is granted to all defendants as a matter of right, the state must supply counsel for that appeal to indigent defendants. Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). See also Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (holding the state's poll tax unconstitutional because of its necessary denial of the franchise to those unable to pay).
The cases dealing with criminal appeals rest largely on the reasoning, expressed in both Griffin and Douglas, that even though there is no constitutional right to appeal, once such right is granted by the state, it must be granted equally to all defendants regardless of their financial condition. There must be no discrimination against the indigent in his right to appeal; the "type" of appeal he gets should not *298 depend upon his ability to pay. Douglas v. People of State of California, supra, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d, at 814; Griffin v. People of the State of Illinois, supra, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed., at 898-899, 901; cf. Gardner v. California, supra.
Puchalski's argument is that this reasoning should be extended to a New Jersey parole hearing. N.J.S.A. 30:4-123.25 provides:
"When it becomes necessary for a prisoner to appear before the board, either for the purpose of determining his fitness for parole or to afford him an opportunity to be heard as to revocation of parole, such hearing shall be conducted in accordance with the rules and regulations of the board, but the prisoner shall have the right to consult legal counsel of his own selection, if he feels that his legal rights are invaded, and subject to the consent of the board to submit in writing a brief or other legal argument on his behalf to the parole board, and to have the services of an interpreter at his hearing if such services are necessary. The board, however, may call before it such witnesses as it may deem necessary and proper and in order to compel their attendance, shall be vested with the power of subpoena * * *." (Emphasis ours.)
Thus, he contends that, to be even-handed and to avoid constitutional infirmity, the State must provide counsel for this consultative function, where a prisoner is unable to pay for it.
It should be noted that in the Supreme Court cases cited, particularly Griffin and Douglas, the court rested its decision on both the Equal Protection and the Due Process Clauses of the Fourteenth Amendment, without clearly enunciating the standards by which each or both of these provisions was applied. Certainly not all disadvantages of the poor are denials of equal protection. Nor do all burdens under which the poor labor because of their poverty constitute denials of due process of law. The question becomes, under both the Equal Protection and the Due Process Clauses, whether the particular "right" (or "privilege") is of such fundamental importance that it should not be denied anyone because of lack of funds. See "Discrimination *299 Against the Poor and the Fourteenth Amendment," 81 Harv. L. Rev. 435, 437-438 (1967); Gardner v. California, supra.
The question is, therefore, whether the aid of counsel in seeking a parole is of such importance that the State should be required to furnish counsel for this purpose to those who cannot afford to pay for it. It should be noted at the outset that the statute does not provide for the appearance of counsel at the hearing, although the board may permit such appearance if it wishes. Even the matter of consideration of a prisoner's brief is left entirely within the discretion of the Parole Board. Thus, the most that the statute grants as a "right" is that a prisoner may consult with counsel prior to the hearing, and even then only where "he feels that his legal rights are invaded." This we construe to mean invasions which caused or contributed to his wrongful conviction or detention. By the same token, the brief contemplated by the statute must be one which deals with legal questions, not one which merely makes a plea of clemency. The fact that a right to consult counsel was provided for at all would seem to stem more from a desire to insure that if a prisoner needed legal advice he would not be prevented from receiving it, than from a desire to establish a right to consultation with counsel as a part of the hearing procedure.
While it is true that a parole hearing can determine whether a man will remain in confinement or be allowed a supervised freedom, the hearing is still essentially an administrative one concerning the effective operation of the correctional system. There is no adjudication of guilt or innocence, and ordinarily, no fact issues to be resolved such as would require the presence of counsel. Instead, the Parole Board seeks to determine the likely effect upon society and the prisoner of his early release. Only if the Board is of the unanimous opinion (N.J.S.A. 30:4-123.19) that "there is a reasonable probability that, if such prisoner is released, he will assume his proper and rightful place in society, without *300 violation of the law, and that his release is not incompatible with the welfare of society," is the Board authorized to release him on parole. N.J.S.A. 30:4-123.14. Such predictions as to future behavior are necessarily quite subjective and leave the Board with a broad discretion in the grant or denial of parole. Mastriani v. N.J. Parole Board, 95 N.J. Super. 351, 355-357 (App. Div. 1967), and cases there cited. No testimony need be taken; the Board need not divulge to the prisoner the reports upon which it acts; and it is not required to inform the prisoner of its reasons for denying him parole. Id., at p. 356.
In short, under usual circumstances there appears to be no such need there for an attorney as there is up to the time of his conviction and his ultimate confinement. There is no contention here that the present case is in any way unusual.
In State v. Seymour, 98 N.J. Super. 526 (App. Div. 1968), the court followed the United States Supreme Court decision in Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), in holding that a defendant is entitled to counsel at a hearing to revoke probation, and to representation by the Public Defender at such hearing if he is indigent.
The Court in Mempa based its decision that counsel must be appointed to represent an indigent at a probation revocation proceeding on its conclusion that, under the Washington statute there presented, such proceeding was in effect the imposition of sentence which had been "deferred" during the probation period. The court noted that "appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected," and that its decision in Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), "might well be considered to support by itself a holding that the right to counsel applies at sentencing." Mempa v. Rhay, 389 U.S., at p. 134, 88 S.Ct., at p. 257, 19 L.Ed.2d, at p. 340.
*301 The court then considered the nature of the revocation of probation-sentencing procedure and found that counsel is needed at such proceedings to assist the convicted person "in marshaling the facts, introducing evidence of mitigating circumstances and in general aiding and assisting the defendant to present his case as to sentence * * *" Id., 389 U.S., at p. 135, 88 S.Ct., at p. 257, 19 L.Ed.2d, at p. 341. "Even more important" to the court was the fact that under Washington law certain rights could be lost if not exercised at this stage, including the right to appeal and the right to retract a guilty plea at any time up to sentencing.
The court in State v. Seymour, supra, found the reasoning in Mempa applicable to a revocation of probation hearing under New Jersey law.
It should be noted, however, that in neither of these cases was mention made of proceedings to grant parole. The situation presented at the hearing to grant parole is readily distinguishable from the revocation of probation proceedings considered in Mempa and Seymour. In the former, a conditional freedom is being granted to a prisoner by an administrative board, based on a largely discretionary application of its expertise. The factors deemed important in Mempa have passed; sentence has already been imposed; the prisoner has had an opportunity to present evidence to a court, with the advice of counsel, as to its appropriate limits; and there are no substantial legal rights which the prisoner could waive by not exercising them at the parole hearing.
Moreover, in revocation proceedings  both as to probation and parole  there are usually specific factual allegations concerning the conduct of the probationer or parolee said to constitute a violation of probation or parole. An attorney could prove most useful, even essential, in defending against such allegations of misconduct  presenting contrary evidence or cross-examining adverse witnesses if necesary. There are no such issues here.
The refusal to assign counsel and the denial of parole are affirmed.