**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2306-15T1

EUGENE BERTA,

    Appellant,

v.

NEW JERSEY STATE PAROLE BOARD,

    Respondent.

_____

Argued September 27, 2017 — Decided October 26, 2017

Before Judges Fuentes and Manahan.

On appeal from New Jersey State Parole Board.

Eric J. Marcy argued the cause for appellant
(Wilentz, Goldman & Spitzer, PA, attorneys;
Mr. Marcy, of counsel and on the brief).

Gregory R. Bueno, Deputy Attorney General,
argued the cause for respondent (Christopher
S. Porrino, Attorney General, attorney; Lisa
A. Puglisi, Assistant Attorney General, of
counsel; Mr. Bueno, on the brief).

PER CURIAM

    Eugene Berta, incarcerated at East Jersey State Prison,

appeals from a final agency decision of the New Jersey State Parole

Board (Board), affirming the Board panels' decisions denying him

parole and imposing a 120-month future eligibility term (FET). We affirm.

In August 1983, Berta was indicted for murder, N.J.S.A. 2C:11-3 (count one), and second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count two). The indictment arose from the July 16, 1983 discovery of the victim's partially decomposed body in the bathtub of her home in Metuchen. An autopsy revealed that the victim died from a gunshot to the back of her head. State v. Berta, Docket No. A-1909-12 (App. Div. June 5, 2014), cert. denied, 221 N.J. 220 (2015). An investigation eventually led to Berta's arrest, the victim's paramour, who was married and was also carrying on affairs with other women. Berta entered a plea of not guilty. After a three-week jury trial, Berta was convicted as charged. In December 1984, Berta was sentenced to life imprisonment with a thirty-year period of parole ineligibility.

Berta attained eligibility for parole on September 24, 2014. Predicated upon that parole status, a hearing officer referred the matter to a two-member panel for review.

After consideration of Berta's eligibility status, on March 26, 2015, the two-member panel denied Berta parole and referred the matter to a three-member panel to establish a FET outside of the presumptive schedule. The two-member panel cited

institutional infractions. The panel noted that although Berta's last infraction was in October 2002, he had a number of earlier infractions. The panel further noted that there was insufficient problem resolution by Berta, specifically, his lack of insight into his criminal behavior, his denial of committing the crime, and his minimization of his conduct. In support of the panel's determination, it attached addenda, which included a confidential psychological report.

In rendering its decision, the panel also considered Berta's interview, documentation in his case file, and the confidential material report filed. The panel found mitigating factors including: no prior criminal record or minimal criminal record; participation in programs specific to behavior; participation in institutional programs; average to above average institutional reports; institutional adjustment has been favorable, last infraction in October 2002; and risk assessment evaluation, "10 LSI-R" (Level of Service Inventory-Revised). The panel suggested Berta participate in behavior modification, one-to-one counseling, and institutional programs geared toward criminal behavior.

On June 10, 2015, a three-member panel considered Berta's case. Three months later, in an eight-page written decision based upon the two-member panel's findings, the three-member panel

imposed a 120-month FET.[1]  A confidential addendum was also attached to the notice of decision.

Berta appealed the three-member panel's decision to the full Board.  Upon review, the full Board issued a notice of final decision affirming the decision to deny parole and establish a 120-month FET.  This appeal followed.[2]

Berta raises the following arguments on appeal:

POINT I

THE PAROLE BOARD SUMMARILY AND ARBITRARILY DISMISSES OVERWHELMING EVIDENCE THAT PLAINTIFF EUGENE BERTA WILL NOT COMMIT ANOTHER CRIME IF RELEASED ON PAROLE.

POINT II

THE BOARD'S FAILURE TO ASSESS PLAINTIFF'S SUITABILITY FOR PAROLE TO A RESIDENTIAL COMMUNITY TRANSITIONAL PROGRAM WAS ARBITRARY.

---

[1] A FET for an inmate serving a sentence for a crime committed on or after to August 19, 1997, is not reduced by credits.  See N.J.A.C. 10A:71-3.2(i); see also N.J.S.A. 30:4-123.56(b).  For an inmate who committed a crime prior to August 19, 1997, such as Berta, the FET is, however, reduced by credits.  As a result, Berta's parole eligibility is October 2, 2021.  However, the Board panel noted that if Berta's present work assignment and custody status were to continue, his projected parole eligibility date would be in January 2020.

[2] Thereafter, upon motion of the New Jersey State Parole Board, we entered a consent protective order on May 23, 2016.  The Board's confidential appendix includes various psychological evaluations, letters from the victim's family members, and confidential addendums, all of which were reviewed when considering Berta for parole.

POINT III

THE CATCH-22, THE ASSERTION OF INNOCENCE IN
PAROLE CONSIDERATION — THE CONSEQUENCES OF
FAILING TO ADMIT GUILT AT THE PAROLE HEARING.

POINT IV

IT IS A VIOLATION OF DUE PROCESS TO 1) PARSE
THE RECORD TO DENY PAROLE; 2) IGNORE
PLAINTIFF'S SUITABILITY FOR COMMUNITY
RESIDENTIAL TRANSITIONAL PROGRAMS; 3) EXCLUDE
DEPARTMENT OF CORRECTION PSYCHOLOGICAL
EVALUATIONS; AND 4) PERMIT THE SUPPRESSION OF
RECOMMENDATIONS BY VOLUNTEERS.

Berta raises the following additional arguments on appeal under

one point heading:

POINT I

THE BOARD EXCLUDED INFORMATION IT WAS REQUIRED
TO CONSIDER, FOCUSED ENTIRELY ON THE FACTS OF
THE ORIGINAL CRIME AND PLAINTIFF'S ASSERTION
OF INNOCENCE, AND DISREGARDED COMPELLING
POSITIVE INFORMATION REQUIRING A REMAND TO THE
FULL BOARD[.]

A. Lip Service to Having
Acknowledged the Existence of
Mitigating Information is Not a
Substitute for an Honest
Consideration and Evaluation of
Compelling Positive Information
that Supports Parole[.]

B. The Failure to Obtain and Review
the Department of Correction
Psychological Evaluation Violates
N.J.A.C. 10A:71-3.11(b)4, 11, 13,
and, at a Minimum, Requires a
Reversal and Remand for
Consideration of Such Evaluations
by the Full Board[.]

C. The Appellate Division Should Confirm that Recommendations of Staff and Volunteers Should Not Be Suppressed — the Case Should be Remanded for Consideration of the Two Recommendations that were Withdrawn Under the Threat of Dismissal[.]

D. The State Relies Heavily on the Board's "Subjective Assessment of a "Deeply Rooted Pathology" Which, Under This Record, is a "Gut Feeling" that is Insufficient to Deny Parole[.]

E. The Board's Actions in Submitting an Incomplete Record . . . [.]

The scope of appellate review of final decisions of administrative agencies is limited. In re Stallworth, 208 N.J. 182, 194 (2011). We do not disturb decisions of the Board, like those of other administrative agencies, unless they are "arbitrary, capricious or unreasonable or [are] not supported by substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 580 (1980) (citing Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963)); see also Trantino v. N.J. State Parole Bd., 166 N.J. 113, 192 (2001) (Trantino VI). We will set aside an agency decision only "if there exists in the reviewing mind a definite conviction that the determination below went so far wide of the mark that a mistake must have been made." N.J. State Parole Bd. v. Cestari, 224 N.J.

Super. 534, 547 (App. Div.) (quoting <u>613 Corp. v. N.J., Div. of State Lottery</u>, 210 <u>N.J. Super.</u> 485, 495 (App. Div. 1986), <u>certif. denied</u>, 111 <u>N.J.</u> 649 (1988).

Berta argues that the Board failed to specifically discuss and analyze the weight accorded to each factor, including Berta's parole plan, employment and volunteer history prior to incarceration and during incarceration, and participation in educational and rehabilitate programs. We disagree.

The Supreme Court has held that the Board's "decisions are highly 'individualized discretionary appraisals.'" <u>Trantino VI</u>, <u>supra</u>, 166 <u>N.J.</u> at 173. "Accordingly, the Board 'has broad but not unlimited discretionary powers,' and its determinations 'are always judicially reviewable for arbitrariness.'" <u>Ibid.</u> (quoting <u>Monks v. N.J. State Parole Board</u>, 62 <u>N.J.</u> 348, 359 (1973). The Board's decisions "depend[] on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release." <u>Greenholtz v. Inmates of Neb. Penal & Corr. Complex</u>, 442 <u>U.S.</u> 1, 10, 99 <u>S. Ct.</u> 2100, 2105, 60 <u>L. Ed.</u> 2d 668, 677 (1979). As the Court observed, parole boards should focus on "what a man is and what he may become rather than simply what he has done." <u>Ibid.</u> (citation omitted).

If the crime for which an inmate is incarcerated occurred before August 19, 1997, "the Board panel shall determine whether . . . by a preponderance of the evidence . . . there is a substantial likelihood that the inmate will commit a crime under the laws of the State of New Jersey if released on parole." N.J.A.C. 10A:71-3.10(a).[3] Thus, when an inmate becomes eligible for parole, there is a "presumption in favor of parole," In re Trantino Parole Application, 89 N.J. 347, 356 (1982) (Trantino II), and the burden is on "the State to prove that the prisoner is a recidivist and should not be released." Trantino VI, supra, 166 N.J. at 172 (quoting N.J. State Parole Bd. v. Byrne, 93 N.J. 192, 205 (1983)).

This is a "highly predictive" determination, Thompson v. N.J. State Parole Bd., 210 N.J. Super. 107, 115 (App. Div. 1986) (quoting Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 368, 359 (1973)), which must take into account "the aggregate of all of the factors which may have any pertinence." Beckworth, supra, 62 N.J. at 360.

---

[3] Parole decisions for inmates who are serving sentences for crimes committed before August 18, 1997, are governed by the parole standards set forth in N.J.S.A. 30:4-123.53(a) prior to the amendment, whereas parole decisions made for those serving sentences for crimes committed after that date are governed by the revisions to that statute. Williams v. N.J. State Parole Bd., 336 N.J. Super. 1, 7 (App. Div.), certif. denied, 165 N.J. 523 (2000).

A-2306-15T1

N.J.A.C. 10A:71-3.11(b)(1) to (23) contains a non-exhaustive list of factors that the Board may consider in determining whether an inmate should be released on parole. Among the pertinent factors are "[s]tatements by the inmate reflecting on the likelihood that he or she will commit another crime; the failure to cooperate in his or her own rehabilitation; or the reasonable expectation that he or she will violate conditions of parole[]" as well as "any other factors deemed relevant[.]" Ibid. "[T]he Board [must] focus its attention squarely on the likelihood of recidivism." McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 565 (App. Div. 2002).

Upon review of the record, we find the applicable factors were taken into account in reaching the decisions, as evidenced by the two-member panel's notice of decision, addendum, and confidential addendum, as well as the three-member panel's notice of decision, addendum, and confidential addendum. The addendum to the two-member panel's decision offers noteworthy insight and is provided in full:

> The crime in this case was the product of a toxically manipulative criminal personality. Inmate Berta's manipulation of his wife, the victim and at least one other woman resulted in the cold[-]hearted execution of a girlfriend[.] After shooting her with her own handgun, he simply left her body in her own bathtub and he left on a vacation with another lover — using the tickets purchased

by the deceased. His wife and children stayed in New Jersey. Trial testimony showed that [the victim] was murdered on July 8, 1983. Her body was discovered on July 16[,] after her parents became concerned when she didn't appear to have returned from the planned vacation. The body was in an advanced state of decomposition.

Evidently, [i]nmate Berta's relationship with [the victim] had become strained after he had not sought a divorce from his wife. On the same day of the murder, [i]nmate Berta left for the vacation with [another girlfriend, P.B.]. The Pre-Sentence Investigation Report (PSI) summarized some of the testimony from trial as follows:

> [P.B.] . . . testified that when she and [Berta] were at the Northwoods Motel in Barnum, Minnesota on the night of [July 9, 1983, Berta] produced a handgun. She stated she did not see where the gun came from and when she asked [Berta what he] was doing with the gun, he told her that he always carried it with him. She stated that she did not see the gun the remainder of the trip. [P.B] also testified that on the way to the airport [Berta] asked her, "Do you love me?" She replied in the affirmative. He then asked her, "Do you believe that I love you?" She replied in the negative. [Berta] then stated, "You better, I just killed [three] people, I'll blow your God damn brains out." [Berta] also told [P.B.] that she did not have to worry about the victim as she was completely out of the picture. It was also learned that the victim had given [Berta] $5000

on [June 24, 1983,] and another
$5000 on [July 7, 1983].

While all of this lethal drama was taking
place, [i]nmate Berta had a responsible job,
a wife and children. He had never been
convicted of any other crimes and he may have
appeared to all of the world to be a normal,
successful husband and father and a low risk
for criminal activity. The profound nature
of his many manipulations and the cold-blooded
nature of his execution of [the victim] tell
quite a different story.

Inmate Berta's superficial success on the
street is mirrored in his seeming success
during his incarceration. In prison, he has
taken many programs and has a low Level of
Service Inventory-Revised (LSI-R) score of
[ten]. For many inmates, such a record would
be a very good sign of growth. However, a
closer examination of [i]nmate Berta's prison
programs reveals a mixed picture. He did take
Anger Management, AA, Houses of Healing and
has sought to enter Palliative Care Program
and, more recently, Focus on the Victim. The
bulk of his completed programs, however, have
been directed at academic or vocational
interests — Building Trades, Culinary Acts,
Masonry, U.S. History, Employment Readiness,
Civil Rights, Urban American History, and
Introduction to Sociology. Inmate Berta's
challenge is not so much in finding a job.
His challenge is in overcoming the truly
malignant aspects of his manipulative
personality.

Moreover, his Low LSI-R score is more a
reflection of his work history on the streets,
his age and certain other relatively static
factors. In fact, it is likely that he would
have similarly low score if he had taken the
test on the day before his brutal crime. The
panel finds and assigns less weight to the

11

LSI-R score and to some of his programs as it does to the current nature of his personality.

During his hearing, [i]nmate Berta flatly denied committing the murder. Instead, in a carefully worded statement, he stated[,] "[Programs] have given me insight into my prior behavior which resulted in [the victim's] murder." I accept responsibility for that behavior and for the death of [the victim]." When pressed to explain what actions led to the victim's murder, he said: "Well, I was married as you know. I was having an affair with her and seeing another woman besides and I was aware of the fact that my wife did not appreciate me living the lifestyle that I was leading and I continued to do it anyway, not really caring at that time about how anybody felt."

When asked if he was implying that his then wife arranged for [the victim's] murder, [i]nmate Berta said: "I'm suggesting based on the evidence that was brought up during my trial, during the investigation, and since then, that she might have had some involvement in it. Yes."

The [p]anel carefully reviewed various statements that were made by [i]nmate Berta over time about the murder and his involvement. Clearly, his wife was the victim of an unfaithful, abusive and extremely manipulative husband. His recent denials and the attempt to shift blame to his wife are as chilling as they are disgusting. These statements are inconsistent with the weight of the evidence at trial and they are even inconsistent with each other.

It is often difficult for a panel to assess an offender's personality today compared with whom he or she was at the time of a long-ago crime. With [i]nmate Berta, there is no such difficulty. The panel finds

12

that [i]nmate Berta is as deeply possessed of criminal thinking and the compulsion to manipulate as he was when he ended the life of a young woman who loved him. The Panel finds that his is a deeply rooted pathology that is not mitigated by the programs he has taken, or the fact that he has a low LSI-R score. The [p]anel finds that he is a dangerous individual and that there is a substantial likelihood that he would commit another crime if released on parole.

Within the confidential addendum, the Board also referenced and considered the psychologist report.

Contrary to Berta's assertions, the Board considered all applicable mitigating factors, including his achievement and maintenance of minimum custody status, and his favorable institutional adjustment, his last infraction having been committed in 2002. Yet, the Board found these mitigating factors, on balance, were outweighed by other factors. Berta's low LSI-R was specifically found to be less consequential than Berta's psychopathic and manipulative disposition. As such, the Board was well within its discretion to conclude there existed a substantial likelihood that Berta would commit a crime if released.

In the Board's assessment of Berta's likely future behavior, it relied on a "subjective appraisal" predicated upon its experience in parole-release decisions. The Board's decision to grant or deny parole requires a careful review of data gathered from various sources to create a rational basis from which it can

13

make an informed prediction of an inmate's future behavior. This decision-making process is inherently fraught with subjectivity. We thus accord the Board broad discretion. Puchalski v. N.J. State Parole Bd., 104 N.J. Super. 294, 300 (App. Div.), aff'd, 55 N.J. 113 (1969), cert. denied, 398 U.S. 938, 90 S. Ct. 1841, 26 L. Ed. 2d 270 (1970).

In sum, after our independent review of the record, we are satisfied that the Board's decision was supported by sufficient, credible facts in the record, including the Board's confidential appendices. See Greenholtz, supra, 442 U.S. at 9-10, 99 S. Ct. at 2105, 60 L. Ed. 2d at 677. The Board assessed the relevant factors, fully documented, and supported its decision pursuant to N.J.A.C. 10A:71-318(f). In light of the Board's assessment of Berta, and mindful that we "must give 'due regard' to the ability of the factfinder" with expertise in this field to judge credibility, T.H. v. Div. of Developmental Disabilities, 381 N.J. Super. 366, 381-82 (App. Div. 2005), rev'd on other grounds, 189 N.J. 478 (2007), we conclude that the decision was not arbitrary or capricious.

Berta also contends that the Board's imposition of a FET outside of the presumptive guideline was arbitrary, capricious, and unreasonable. We disagree.

An inmate serving a sentence for murder is ordinarily assigned a twenty-seven month FET after a denial of parole. N.J.A.C. 10A:71-3.21(a)(1). The Board in its discretion may add or deduct nine months to this FET. N.J.A.C. 10A:71-3.21(c). However, in cases where an ordinary FET is "clearly inappropriate due to the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior[,]" a three-member panel may impose a FET in excess of administrative guidelines. N.J.A.C. 10A:71-3.21(d). Further, "[i]n making the determination that the establishment of a future parole eligibility date pursuant to (a) or (b) and (c) above is clearly inappropriate, the three-member panel shall consider the factors enumerated in N.J.A.C. 10A:71-3.11." N.J.A.C. 10A:71-3.21(d).[4]

Appellate courts do not substitute their judgment for that of the Board with respect to denial of parole or the setting of a FET. See Cestari, supra, 224 N.J. Super. at 547; see also In re Polk License Revocation, 90 N.J. 550, 578 (1982).

In this matter, the Board established a 120-month FET:

> In establishing this [FET], the Board
> panel recognized that at the time of the

---

[4] Parenthetically, for an inmate who committed a crime prior to August 19, 1997, such as Berta, the FET is reduced by credits. A FET for an inmate serving a sentence for a crime committed on or after to August 19, 1997 is not reduced by credits. See N.J.A.C. 10A:71-3.2(i); see also N.J.S.A. 30:4-123.56(b).

murder in this case, you had a clean criminal record and a very good work record, you were relatively well educated with a wife and children, and overall, you seemingly maintained an "outward appearance" of a normal, successful husband and father. However, the jury's verdict finding you guilty of the murder of [the victim] reveals your manipulation of your wife, the victim and at least one other woman resulting in the execution of your girlfriend[.] In assessing your present state of thinking at your hearing, the Board panel determined that, depending on your audience, your current version of the facts of the murder varies from outright denial, to mitigation of your actions leading up to the murder, to the suggestion of mere coincidence and supposition that your wife committed the murder, yet you accept responsibility for your "actions." Having the opportunity to assess your credibility, the Board panel finds that you have little to no credibility when it comes to questions that involve the murder or your personality and that you are as deeply possessed of criminal thinking and the likelihood to manipulate as you were when you ended the life of a young woman with whom you had a relationship. Your disposition of manipulation continued even after many years of incarceration, thus revealing a lack of satisfactory progress in reducing the likelihood of future criminal behavior.

The Board enunciated specific reasons for the imposition of a 120-month FET. Particularly, the Board noted several reasons for establishing a FET outside of the administrative guidelines. This included Berta's overall institutional adjustment and his insufficient problem resolution. Although the Board noted that Berta's last infraction occurred in 2002, and his seven infractions

16 A-2306-15T1

were minor in nature, the Board found there was "evidence of an inability or unwillingness to restrict [his] behavior to meet the rules and requirements of incarceration." Moreover, the Board detailed its findings regarding Berta's lack of insight into his violent behavior, denial of his crime, and minimization of his conduct.

Although the 120-month FET is lengthy, the Board's decision was reached on sufficient credible evidence amply supported by the record and well within the Board's broad discretion; the imposition of a lengthier FET here is neither arbitrary nor capricious. See Trantino IV, supra, 154 N.J. at 24 (citing Brady v. Dep't of Pers., 149 N.J. 244, 256 (1997). See, e.g., McGowan, supra, 347 N.J. Super. at 565 (upholding the establishment of a thirty-year FET). See also Johnson v. Paparozzi, 219 F. Supp. 2d 635, 642-43 (D.N.J. 2002) (rejecting an inmate's argument that the setting of a 120-month FET was unconstitutional where the panel complies with the direction of N.J.A.C. 10A:71-3.21 and considers the twenty-three factors enumerated in N.J.A.C. 10A:71-3.11).

Additionally, pursuant to N.J.A.C. 10A:71-3.21(d)(4), the Board provided a written statement of reasons for the establishment of a FET differing from the presumptive guideline established in N.J.A.C. 10A:71-3.21(a). While regard was also given to mitigating factors, which the Board enumerated in its decision, based on

"sufficient credible evidence in the whole record," the balance weighed in favor of denying parole and in fixing Berta's FET at 120 months.  See Cestari, supra, 154 N.J. Super at 547.

Having reviewed the record in light of these well-settled standards, including the psychological evaluation and other materials in the confidential appendix, we conclude that appellant's arguments are without merit.  We are satisfied that the Board considered the "aggregate of all pertinent factors," N.J.A.C. 10A:71-3.11(a).  The totality of the aggravating factors, supported by the record, provided the Board with sufficient bases to deny parole and impose the FET.  N.J.A.C. 10A:71-3.21(d). In sum, the Board's decision is entitled to our deference.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION