**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4335-18T1

ANTOINE ANDERSON,

     Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

     Respondent.

_____

Submitted September 14, 2020 – Decided October 8, 2020

Before Judges Rothstadt and Susswein.

On appeal from the New Jersey State Parole Board.

Antoine Anderson, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raska, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the brief).

PER CURIAM

Antoine Anderson is a State Prison inmate serving a life sentence imposed on his 1989 trial convictions for murder, armed robbery, and related weapons offenses. He appeals from a final agency decision of the New Jersey State Parole Board denying his application for parole and imposing a 120-month future eligibility term ("FET").[1] We have considered Anderson's arguments in light of the record and applicable legal standards and affirm the Parole Board's final agency decision.

I.

This case arises from a robbery committed in August 1988. The victim resisted when Anderson reached into his pocket. Anderson pulled out a handgun and fatally shot the victim in the chest. In July 1989, defendant was convicted at trial of knowing/purposeful murder, felony murder, robbery, unlawful possession of a handgun, and possession of a weapon for an unlawful purpose. He was sentenced to an aggregate life term with a thirty-year term of parole ineligibility.

Defendant became eligible for parole in August 2018, after serving the statutorily mandated period of parole ineligibility. A two-member Board panel denied parole and referred the matter to a three-member panel to fix an FET

---

[1] Anderson's new projected parole eligibility date is December 2024.

outside of the administrative guidelines, which provide for a standard FET of twenty-seven months. See N.J.A.C. 10A:71-3.21(a)(1). The three-member panel imposed a 120-month FET. The panel issued a nine-page opinion explaining the reasons for its decision.

Anderson pursued an administrative appeal to the full Board. After considering the entire record, the full Board agreed that there is a substantial likelihood that Anderson would commit another crime if released on parole. Upon that finding, the full Board affirmed the parole denial and also affirmed the 120-month FET.

Anderson, appearing before us pro se, presents the following contentions for our consideration:

POINT I

THE DECISION TO DENY PAROLE AND IMPOSE AN EXTENDED [FET WAS] ARBITRARY, CAPRICIOUS, AND UNREASONABLE, IN LIGHT OF THE RECORD, AND THOSE DECISIONS SHOULD BE REVERSED IN FAVOR OF A FULL BOARD HEARING.

II.

We begin our review by acknowledging the legal principles governing this appeal and the highly deferential standard of review we apply to the Parole Board's decision-making authority. The scope of our review is guided by the

3

"arbitrary and capricious" standard that constrains other administrative action. Acoli v. N.J. State Parole Bd., 224 N.J. 213, 222-23 (2016). Parole decisions are "individualized discretionary appraisals." Trantino v. N.J. State Parole Bd., 166 N.J. 113, 173 (2001) (quoting Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 359 (1973)). Those decisions, moreover, are inherently subjective, and ultimately must be made by those with experience and expertise in this field. See Puchalski v. N.J. State Parole Bd., 104 N.J. Super. 294, 300 (App. Div. 1969) ("Such predictions as to future behavior are necessarily quite subjective and leave the Board with a broad discretion in the grant or denial of parole.").

Anderson committed the underlying crimes in 1988. The statute governing parole in effect at the time of his offense establishes a presumption of parole that is overcome only if the Board finds "by a preponderance of the evidence . . . there is a substantial likelihood that the inmate will commit a crime under the laws of this State if released on parole at such time." N.J.S.A. 30:4-123.53 (amended 1997). In making its determination, the Board must consider all pertinent factors, including those set forth in N.J.A.C. 10A:71-3.11(b).

With respect to mitigating factors, the Board in this case found (1) participation in programs specific to his behavior; (2) participation in

4

institutional programs; (3) institutional reports reflecting favorable institutional adjustments; and (4) attempts made to enroll in programs.

The Board found the following aggravating factors: (1) the facts and circumstances of the offense; (2) his extensive prior criminal record; (3) the nature of his criminal record showing the crimes became more serious; (4) the prior opportunity of probation was revoked based on commission of a new offense; (5) commission of a new offense on probation that was not revoked; (6) prior opportunities of probation and parole and prior incarcerations failed to deter criminal behavior; (7) commission of numerous, persistent serious disciplinary infractions resulting in loss of commutation time and confinement in administrative segregation; and (8) insufficient problem resolution including lack of insight into criminal behavior and failure to address a substance abuse problem.

The Board's findings with respect to aggravating and mitigating factors were supported by information presented in a panel interview, pre-parole report, a confidential psychological report, and the results of an objective risk assessment evaluation. The Board also considered the letters of mitigation Anderson submitted.

The detailed reasons given by the Board in support of its decision amply demonstrate that it did not abuse its discretion in concluding that the aggravating factors qualitatively outweighed the mitigating factors. As previously noted, parole decisions are inherently subjective, and we are required to respect the Parole Board's experience and expertise. Puchalski, 104 N.J. Super. at 300. On this record, we have no reason to second-guess the Board's findings or conclusions and thus defer to the Board's expertise in these matters.

The Board was especially thorough in documenting the basis for its conclusion that Anderson has not sufficiently resolved the problems that give rise to his violence. The Board found that he lacks insight into his criminal behavior, lacks remorse for the murder victim's death, and has not sufficiently addressed a substance abuse problem. We recite the Board's explanation verbatim to demonstrate the level of detail undergirding the Board's conclusion:

> The Board panel assessed whether you possess an understanding [of] the motivations of your anti-social decision-making and your choice to gravitate to negative behavioral choices. The assessment was essential to evaluate if you will behave/react in a similar manner if released on parole. The Board panel finds that after [thirty] years of incarceration, you lack substantive insight into your anti-social thinking. You provided to the Board panel the details [of] your formative years, which included you choosing a life [of] the streets instead of education and school. Further, you detailed how you associated with same-

minded peers, who sold drugs for profit. You claimed that you did not sell drugs and that your "forte" was robbing drug dealers, the same type of individuals whom you associated with. Your lifestyle led to a criminal offense record beginning as a juvenile and in fact you were on juvenile parole for an Armed Robbery offense when the murder occurred. You offered to the Board panel that the murder occurred purely as a reaction when the victim resisted your attempt to rob him, but then later countered that assertion when you agreed with the Board panel's assessment that you shot the victim to demonstrate that people should not resist when you attempt to rob them. You described a lifestyle choice to the Board panel wherein you carried a gun on your person in day[-]to[-]day life and that committing illegal acts to financially support yourself was chosen over obtaining legal employment.

    . . . .

[Y]ou spoke of the infractions you committed during your incarceration. In several incidents, on one hand you defined [your] acts as "self-defense" against other inmates, but when pressed for further details you described events of harsh words with the prevalent theme of disrespect. This was the case when talking of your most recent asterisk infraction (fighting) in 2016. In total, the Board panel finds that you only possess a superficial understanding [of] your anti-social and at times, reactionary behavior when exposed to negative situations. You identified your choice to live a criminal life[]style beginning as an adolescent. However, you are unable to articulate the motivations for you to behave in such a manner for an extended time. Further, it appears lost on you the gravity of your actions. You spoke in a rather matter-of-fact manner when noting that you carried a weapon on your person daily, conduct on your part which played a significant role in the

circumstances of the victim's death. Similarly, you spoke of your use and abuse of alcohol and drugs, not articulating the role they played in your criminality. The Board panel finds that you do not fully grasp the gravity of your actions or effects of the consequences of your behavior. As a result, offerings of remorse on your part appear as being superficial. The Board panel finds more work needs to be done by you to address these issues.

We add that we previously have affirmed denial of parole in cases where the Board cited insufficient problem resolution and lack of insight as an aggravating factor. See, e.g., McGowan v. New Jersey State Parole Bd., 347 N.J. Super. 544, 558-59, 565 (App. Div. 2002) (affirming the Board's denial after the Board found "appellant's lack of insight into what caused him to commit this offense was 'extremely disconcerting'"). We believe the Board in this instance gave appropriate weight to the insufficient problem resolution circumstance in evaluating and balancing the pertinent aggravating and mitigating factors.

In addition to finding that Anderson had only a superficial understanding of the underlying motivations for his criminal behavior, the Board also concluded that he had so far not made sufficient rehabilitative progress, does not understand the consequences of his actions, and has a propensity for negative behavior when faced with stressful or confrontational situations.

In reaching these conclusions, the Board appropriately accounted for Anderson's troubling institutional record. During his incarceration, defendant accumulated twenty-three disciplinary infractions, including ten serious infractions. Defendant most recently committed a serious infraction in 2016, which involved fighting. It is noteworthy that Anderson has lost a total of 1180 commutation credits as a result of these institutional infractions.

The same circumstances that led the Board to deny parole also support its decision to impose a 120-month FET. Pursuant to N.J.A.C. 10A:71-3.21(a)(1), the standard FET would have been twenty-seven months. The regulations provide that the Board may impose an FET outside the standard guidelines if it determines that the standard FET is "clearly inappropriate due to the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior." N.J.A.C. 10A:71-3.21(d). In this instance, the Board adequately explained the basis for its decision to go outside the standard FET guidelines and impose a 120-month FET, relying heavily on plaintiff's continuing failure to gain an understanding of the reasons that impelled his violence. The full Board did not abuse its broad discretion when it determined that the additional prison time is needed in light of Anderson's superficial understanding of the underlying motivations for his criminal behavior.

## III.

Aside from arguing that the Board's decision was arbitrary and an abuse of its discretion, Anderson contends that because he was convicted of murder, a majority of the full Board was required by law to conduct a hearing. Anderson's argument is based on a misreading of the applicable statute. N.J.S.A. 30:4-123.55(f) provides, in pertinent part, that "[n]otwithstanding the provision of any other law to the contrary, if an inmate incarcerated for murder is recommended for parole by the assigned board member or the appropriate board panel, parole shall not be certified until a majority of the full parole board, after conducting a hearing, concurs in that recommendation." See also N.J.A.C. 10A:71-3.18(c). Under this statutory framework, a majority of the full Board is required to conduct the hearing only when an assigned Board member or Board panel recommends parole for a convicted murderer. Cf. Acoli, 224 N.J. at 231-32 (recognizing that the administrative scheme for parole envisions that a convicted murderer will undergo a full hearing before the Parole Board prior to securing release from incarceration). In this instance, the panel denied defendant's application for parole. In these circumstances, Anderson was not entitled to a hearing before a majority of the full Board.

Anderson further argues the Board misunderstood the nature of the offense by finding that he committed two homicides when in fact he murdered a single victim. This claim is belied by the record. The Board correctly noted that defendant was convicted of both knowing/purposeful murder and felony murder but recognized there was only one murder victim and that the two murder convictions had been merged at sentencing.

Anderson also argues that his juvenile history and other circumstances relied on by the Board are too remote and thus irrelevant to whether he is likely to commit another crime if he were to be paroled. We disagree. His criminal and institutional record are static factors the Board may consider pursuant to N.J.A.C. 10A:71-3.11(b)(2)-(7). We do not believe the Board placed inappropriate emphasis on these circumstances. Nor do we believe the Board viewed them out of context or without due regard to the elapsed time.

To the extent we have not already addressed them, any other arguments raised by Anderson do not have sufficient merit to warrant discussion in this written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-4335-18T1