**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0494-22
A-1180-22

IN THE MATTER OF PETITION
FOR RULEMAKING TO AMEND
N.J.A.C. 10A:71-3.11.

_____

IN THE MATTER OF PETITION
FOR RULEMAKING TO AMEND
N.J.A.C. 10A:71-3.11,
N.J.A.C. 10A:71-2.2, and
N.J.A.C. 10A:71-3.20.

_____

    Argued April 17, 2024 – Decided May 13, 2024

    Before Judges Currier, Firko and Susswein.

    On appeal from the New Jersey State Parole Board.

    Michael Ross Noveck, Assistant Deputy Public Defender, argued the cause for appellants Ronald Robbins, Joseph E. Krakora and the New Jersey Office of the Public Defender (Jennifer Nicole Sellitti, Public Defender, attorney; Michael Ross Noveck, of counsel and on the briefs).

    Christopher Josephson, Deputy Attorney General, argued the cause for respondent New Jersey State Parole Board (Matthew J. Platkin, Attorney General,

attorney; Sara M. Gregory, Assistant Attorney General, of counsel; Christopher Josephson, on the brief).

Natalie J. Kraner argued the cause for amicus curiae American Civil Liberties Union of New Jersey and Formerly Incarcerated New Jersey Young Offenders (Lowenstein Sandler, LLP, American Civil Liberties Union of New Jersey Foundation, and the Rutgers Criminal and Youth Justice Clinic, attorneys; Natalie J. Kraner, Pati Candelario, Alexander Shalom, Jeanne LoCicero, and Laura Cohen, on the brief).

Jennifer B. Condon argued the cause for amicus curiae Center for Social Justice at Seton Hall University School of Law (Center for Social Justice at Seton Hall University School of Law, attorneys; Jennifer B. Condon, on the brief).

PER CURIAM

In these consolidated appeals, petitioners Ronald Robbins, a State Prison inmate, former Public Defender Joseph E. Krakora, and the Office of the Public Defender (OPD) appeal from final decisions by the State Parole Board (Board) denying their petitions to modify the Board's regulations. Petitioners propose amendments to the administrative code that would: (1) require the Board to consider age-based recidivism statistics showing that inmates are less likely to commit crimes as they get older, supplementing the non-exhaustive list of relevant factors enumerated in N.J.A.C. 10:71-3.11(b); (2) preclude the Board from considering an inmate's youthful misconduct or otherwise treating youth

A-0494-22

as an aggravating factor; and (3) codify the requirements of procedural due process set forth in caselaw when deciding whether to withhold from disclosure confidential information—such as an inmate's psychological evaluation—considered by the Board in making its parole determination.

We conclude the Board did not act arbitrarily, capriciously, or unreasonably by declining to incorporate an "age curve" into its regulatory text. Nor was the Board arbitrary, capricious, or unreasonable in declining to modify its current regulations to categorically prohibit the Board from treating youth as an aggravating circumstance. We are satisfied the Board acted within its broad rulemaking prerogative by leaving intact a detailed and comprehensive regulatory framework that requires parole determinations be made on an individualized basis accounting for all relevant facts and circumstances, including an inmate's age and maturity when appropriate.

The Board's rejection of the OPD's proposal to amplify the regulations governing the release of confidential information presents a closer question. OPD seeks to codify the procedural due process requirements set forth in Thompson v. N. J. State Parole Bd., 210 N.J. Super. 107 (App. Div. 1986). Petitioners and amici assert that the Board has in practical effect adopted a policy to categorically deny access to inmate psychological reports used during

A-0494-22

the consideration of parole, rather than make disclosure decisions on a case-by-case basis as contemplated in Thompson. Although that assertion is concerning, it is not supported by evidence in the record before us, and the Board asserts its disclosure decisions are made in accordance with Thompson.

The limited record developed in this appeal does not permit us to scrutinize how the Board exercises its discretion when deciding whether to deny access to confidential records. In the absence of evidence of procedural due process violations, given the deference we must accord to the Board's discretion to deny a rulemaking petition, we are constrained to accede to its decision to leave the confidentiality regulations in their present form. We nonetheless stress the procedural due process requirements set forth in Thompson must be complied with in all cases regardless of whether those safeguards are explicitly codified in regulatory text. With that important caveat in mind, we affirm.

## I.

In June 2022, Robbins filed a petition for rulemaking asking the Board to amend N.J.A.C. 10A:71-3.11(b) to include age-based recidivism statistics as one of the enumerated factors to be considered at a parole hearing. The proposed new subsection, N.J.A.C. 10A:71-3.11(b)(25), would read: "[t]he Parole Board

4

shall consider [age-based] recidivism statistics as relevant evidence in all parole release and Future Eligibility Term [(FET)] decisions."[1]

In his petition, Robbins argued the New Jersey Supreme Court in Acoli v. N.J. State Parole Bd., 250 N.J. 431 (2022), "decided, decreed, and declared, for the very first time, the common sense principle of the law of N.J.R.E. 401 that [age-based] recidivism statistics are relevant evidence in parole decisions."[2] Robbins described those statistics as "objective and neutral, providing a broad, holistic, criminological, and ultimately more accurate decision making on substantial evidence to grant or deny release and on [FETs]."

On August 31, 2022, the Board denied Robbins's petition. The Board explained it did not interpret Acoli to require the inclusion of age-based recidivism statistics as a parole factor in the administrative code. Rather, the Board interpreted "Acoli, to hold that, when applicable, the [Board] shall consider an incarcerated person's advanced age as a factor in making a parole release decision." The Board concluded, "[t]he parole release decision remains

---

[1] If the inmate is not released, the Board must set a future date of parole eligibility, known as an FET. See N.J.S.A. 30:4-123.56; N.J.A.C. 10A:71-3.21.

[2] N.J.R.E. 401 defines "relevant evidence" as "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action."

an individualized assessment and an incarcerated person's age is not necessarily a conclusive factor in a parole release decision but shall be considered when applicable."

In September 2022, Krakora and the OPD filed a rulemaking petition proposing three amendments to the administrative code. First, the OPD sought to amend N.J.A.C. 10A:71-3.11(b)(7) and (24) to expressly prevent the Board from considering a person's youth as an aggravating factor in parole decisions. Specifically, the OPD proposed that subsection seven, which requires consideration of the inmate's "[p]attern of less serious disciplinary infractions," be amended to include consideration of "whether serious infractions were committed solely or primarily before the inmate's age of maturity (at least [twenty-five] years old, or older for a person whose incarceration commenced prior to the person's twenty-first birthday)."

With respect to N.J.A.C. 10A:71-3.11(b)(24), which requires consideration of the inmate's "[s]ubsequent growth and increased maturity of the inmate during incarceration," the OPD proposed the following sentence be added: "[i]n evaluating this factor, the hearing officer, Board panel, or Board shall not consider as an aggravating factor the inmate's failure to demonstrate growth and maturity prior to the age of maturity (at least [twenty-five] years old,

or older for a person whose incarceration commenced prior to the person's twenty-first birthday)."

In support of those proposed revisions, the OPD petition relied on State v. Rivera, 249 N.J. 285, 303 (2021), in which our Supreme Court stated, "youth may be considered only as a mitigating factor in sentencing and cannot support an aggravating factor." The OPD petition anticipated two possible violations of this principle. First, the OPD argued the Board "could, in evaluating a young person who is eligible for parole, determine that the person's lack of 'subsequent growth and increased maturity' is an aggravating factor demonstrated not by their past actions, but by (1) their youthful immaturity in committing the offense and (2) their lack of opportunity to engage in other similar acts due to their youth." Second, the OPD objected "to the setting of lengthy [FETs] for youthful offenders based on behavior that was the product of youthful immaturity."

Next, the OPD petition asked for the addition of a new subsection, N.J.A.C. 10A:71-3.11(b)(25), which would require the Board to account for studies showing, "[t]hat the inmate's age upon release decreases the likelihood that the inmate will commit a crime if released in light of the inverse relationship between age and recidivism." The OPD petition relied on sentencing caselaw and social science research, arguing the Board's "failure to consider the

relevance of advanced age to lack of recidivism risk renders its decision making arbitrary and capricious."

Finally, the OPD petition sought changes to the regulations governing when inmates seeking parole may be denied access to psychological reports and other medical records relied on by the Board. The OPD examined the legal framework established in Thompson, which held a person seeking parole has a qualified due process right to materials relied upon by the Board that can be overcome only by a determination that a specific document cannot be released due to institutional security and rehabilitation concerns. See Thompson, 210 N.J. at 126-27.

The OPD petition recounted the history of those regulations, contending they "were originally designed to prevent public access to a person's sensitive medical information but then devolved into an inappropriate restriction on a person seeking parole's ability to access their own records." The OPD petition asserted the current regulation "deviates significantly" from Thompson and claimed the problem is "compound[ed] on parole appeals" because the Board requires attorneys to sign a Consent Protective Order (CPO) prohibiting them "from sharing or discussing confidential documents with their clients." The OPD proposed revisions to align the Board's confidentiality rules with

Thompson "by requiring all materials be disclosed to the person seeking parole unless there is a legitimate reason for failing to disclose specific material to the inmate or parolee," in which event the specific reason or reasons must be "appropriately document[ed] . . . in the [Board's] files for appropriate judicial review."

On October 26, 2022, the Board denied the OPD's petition. In rejecting the requested modifications to N.J.A.C. 10A:71-3.11(b)(24), the Board noted "Rivera is a criminal case and it does not directly apply to parole decisions." The Board found no support for the OPD's argument that it would impermissibly apply the subsection as presently written. The Board explained its "determination of subsequent growth and maturity has been based upon factors such as the incarcerated person's prison record, including disciplinary record and program participation during incarceration following their conviction, professional evaluations and the incarcerated person's presentation at parole hearings."[3]

---

[3] The Parole Act requires the Board to perform "an objective risk assessment." N.J.S.A. 30:4-123.52(e); see N.J.A.C. 10A:71-3.11(b)(23) ("[t]he results of the objective risk assessment instrument"). The Board commissions an in-depth psychological assessment for the purpose of evaluating an inmate's suitability for release. See Berta v. N.J. State Parole Bd., 473 N.J. Super. 284, 308-10 (App. Div. 2022).

The Board concluded <u>Rivera</u> and <u>Berta</u> do not require an amendment to the administrative code, explaining:

> While the [Board] does not believe <u>Rivera</u> applies, recent case law suggests that the [Board] cannot deny parole based on the commission of remote disciplinary infractions, whether serious or not serious <u>Berta</u>[], 473 N.J. Super. [at 284]. Though the temporal remoteness of infractions may not reasonably be deemed to suggest a likelihood of reoffending, if an incarcerated person continues to commit infractions through the course of the incarceration, the [Board] believes that it can continue to consider the person's infraction history as a factor in a parole release decision, as it demonstrates that the person has an ongoing problem complying with rules . . . . Though the [Board] should give lesser weight to disciplinary infractions that are remote in time, this goes to the weight of the [Board's] consideration, not to whether those infractions should be considered at all.

Regarding the OPD's request for a new mitigating factor accounting for an inmate's age, the Board stated, "there is recent case law to suggest that an incarcerated person's advanced age must be considered in certain applicable cases." However, the Board further reasoned,

> [t]he [Board's] regulations provide for a "catch-all" factor that reflects that the [Board] should consider all relevant factors, thereby making it unnecessary to include advanced age as an additional factor. Even though <u>Acoli</u> and <u>Berta</u> have made it clear that the [Board] must consider an incarcerated person's advanced age when making a parole release decision in certain cases, the decisions do not give clear guidance when "advanced age" must be considered . . . . Parole

release decisions, of course, remain individualized assessments and an incarcerated person's age is not necessarily a determinative factor in a parole release decision.

Finally, the Board rejected the OPD's request to modify the rules regarding the confidentiality of mental health evaluations, concluding its current approach is consistent with Thompson and due process requirements. The Board explained it "does note in the incarcerated person's file the basis for the withholding of a mental health evaluation from the incarcerated person and said basis is available for review by the Appellate Division." Further, the Board explained it "release[s] mental health evaluations as directed pursuant to a court order and does release mental health evaluations pursuant to a consent protective order/agreement as contemplated by Thompson."

In October 2022, Robbins filed a notice of appeal of the Board's August 31, 2022 decision. In December 2022, the OPD filed a notice of appeal of the Board's October 26, 2022 decision. We granted the OPD's motion to consolidate the appeals.

We also granted requests by the American Civil Liberties Union–New Jersey (ACLU-NJ), Formerly Incarcerated New Jersey Young Offenders (FINJYO), and the Center for Social Justice at Seton Hall Law School (CSJ), to appear as amicus curiae. This appeal follows.

Petitioners Robbins, Krakora, and the OPD raise the following contentions for our consideration in their joint brief:

POINT I

Because the [Board] Must Account for the Age-Crime Curve in Its Parole Release Decisions, the Board's Refusal to Amend N.J.A.C. 10A:71-3.11(b) to Require Consideration of Age-Based Recidivism Statistics and the Inverse Relationship Between Age and Recidivism Was Arbitrary, Capricious, and Unreasonable.

POINT II

The [Board] Acted Arbitrarily, Capriciously, and Unreasonably in Rejecting Amendments to N.J.A.C. 10A:71-3.11(b)(7) and N.J.A.C. 10A:71-3.11(b)(24) That Would Prevent Use of Youth and Immaturity as an Aggravating Factor, Based on Psychological and Neuroscientific Research and Related New Jersey Law.

POINT III

The [Board]'s Refusal to Amend N.J.A.C. 10A:71-2.2 and N.J.A.C. 10A:71-3.20 to Permit People Seeking Parole to Access Otherwise Confidential Records in the Absence of a Documented, Case-Specific Reason for Denial of Access Was Arbitrary, Capricious, and Unreasonable in Violation of Due Process and Thompson v. N.J. State Parole Bd., 210 N.J. Super. 107 (App. Div. 1986).

A. Thompson Established a Due Process Right for People Seeking Parole to Access Their Own Records, With Limited Exceptions.

12

B. Since <u>Thompson</u>, the [Board]'s Regulations Have Changed to a Per Se Rule of Nondisclosure That Violates Due Process.

C. The [Board]'s Current Regulation Violates Due Process, and the [Board]'s Refusal to Amend It Is Arbitrary, Capricious, and Unreasonable.

Petitioners raise the following contentions in their reply brief:

<u>POINT I</u>

Because the [Board] Must Account for the Age-Crime Curve in Its Parole Release Decisions, the Board's Refusal to Amend N.J.A.C. 10A:71-3.11(b) to Require Consideration of Age-Based Recidivism Statistics and the Inverse Relationship Between Age and Recidivism Was Arbitrary, Capricious, and Unreasonable.

<u>POINT II</u>

The [Board] Acted Arbitrarily, Capriciously, and Unreasonably in Rejecting Amendments to N.J.A.C. 10A:71-3.11(b)(7) and N.J.A.C. 10A:71-3.11(b)(24) That Would Prevent Use of Youth and Immaturity as an Aggravating Factor, Based on Psychological and Neuroscientific Research and Related New Jersey Law.

<u>POINT III</u>

The [Board]'s Refusal to Amend N.J.A.C. 10A:71-2.2 and N.J.A.C. 10A:71-3.20 to Permit People Seeking Parole to Access Otherwise Confidential Records in the Absence of a Documented, Case-Specific Reason for Denial of Access Was Arbitrary, Capricious, and Unreasonable in Violation of Due Process and <u>Thompson v. N.J. State Parole Bd.</u>, 210 N.J. Super. 107 (App. Div. 1986).

13

Amici Curiae ACLU-NJ and FINJYO raise the following contentions in their joint brief in support of OPD's proposed regulations:

POINT I

BECAUSE THE DEVELOPMENTAL SCIENCE COURTS AND STATE LEGISLATURES ACCEPT AND RELY UPON TO TREAT YOUTH DIFFERENTLY AT SENTENCING ALSO APPLIES TO YOUTHFUL OFFENDERS ONCE THEY ARE INCARCERATED, THE [BOARD] MUST AMEND RELEVANT REGULATIONS TO ENSURE A PERSON'S YOUTH IS CONSIDERED A MITIGATING FACTOR IN PAROLE DECISIONS.

A. The Same Developmental Science That Applies to Sentencing Supports Treating Youth as a Mitigating Factor When Evaluating Prison Disciplinary Infractions Committed by Young People.

B. Parole Boards in Other States Across the Country Have Guidelines That Address the "Diminished Culpability" of Young People and Identify Youth as a Mitigating Factor in Parole Decisions.

POINT II

THE [BOARD] MUST NOT CONSIDER YOUTH AS AGGRAVATING WHEN EVALUATING THE CRIME OF CONVICTION AS A FACTOR IN PAROLE DECISIONS.

A. Developmental Science Requires That Youth Not Be Treated as Aggravating When Considering the Circumstances of the Crime of Conviction in Parole Decisions.

14

B. The [Board] Must Not Consider Youth as Aggravating When Considering the Crime of Conviction to Ensure that the Parole Process Offers a Meaningful Opportunity for Release for Youthful Offenders.

POINT III

THE STORIES OF [FINJYO] WHO HAVE SUCCESSFULLY REENTERED SOCIETY ILLUSTRATE THAT AS AN INDIVIDUAL MATURES IN AGE, THE LIKELIHOOD OF REOFFENDING OR INCURRING SIGNIFICANT DISCIPLINARY INFRACTIONS DECREASES AND THUS THE REGULATIONS GOVERNING PAROLE SHOULD BE AMENDED TO RECOGNIZE THE MITIGATING ASPECTS OF YOUTH.

Amicus Curiae CSJ raises the following contentions in its brief:

POINT I

The Board's Per Se Denial of Psychological and Medical Records to People Seeking Parole Violates Due Process and the Board's Regulations Must Be Revised to Conform to the Constitution.

POINT II

Amicus's Experience with the Board's Approach to Secret Evidence Exposes the Unfairness and Risk of Inaccurate Decision-making Invited by N.J.A.C. 10A:71-2.2.

POINT III

The Board's Default Reliance upon CPOs in Parole Proceedings Is No Substitute for Due Process and Improperly Threatens Attorneys' Duty of Zealous Advocacy to their Clients.

15

II.

We begin our analysis by noting that at oral argument, the OPD emphasized this is not a case brought by an inmate challenging the decision to deny parole or challenging a specific decision to withhold a psychological report the Board had relied on. Rather, petitioners ask us to order the Board to promulgate specific modifications to the administrative code.

The nature of the relief sought in these proceedings invokes a narrow corridor of judicial review. The scope of an appellate court's review of administrative rules, regulations or policy is deferential. In re N.J. State League of Muns. v. Dep't of Cmty. Affairs, 158 N.J. 211, 222 (1999); In re Petitions for Rulemaking, N.J.A.C. 10:82-1.2 & 10:85-4.1, 117 N.J. 311, 325 (1989).

Our review is "generally limited to a determination whether that rule is arbitrary, capricious, unreasonable, or beyond the agency's delegated powers." In re Amend. of N.J.A.C. 8:31B-3.31 & N.J.A.C. 8:31B-3.51, 119 N.J. 531, 543-44 (1990). As our Supreme Court reaffirmed in N.J. Ass'n of Sch. Adm'rs v. Schundler, "[c]ourts afford an agency 'great deference' in reviewing its 'interpretation of statutes within its scope of authority and its adoption of rules implementing' the laws for which it is responsible." 211 N.J. 535, 549 (2012) (quoting N.J. Soc'y for Prevention of Cruelty to Animals v. N.J. Dep't of Agric.,

196 N.J. 366, 385 (2008)). "That approach reflects the specialized expertise agencies possess to enact technical regulations and evaluate issues that rulemaking invites." Ibid.

In this instance, we are not reviewing the text of a challenged regulation to determine, for example, whether it properly implements legislative policy. Rather, we are reviewing an agency's decision to leave its existing regulatory text in place. We stress, moreover, this is not a situation where the Board was obliged to promulgate regulations to implement a new or amended statute as in In re State Bd. of Educ.'s Denial of Petition to Adopt Reguls. Implementing the N.J. High Sch. Voter Registration Law, 422 N.J. Super. 521 (App. Div. 2011). That case implicated our de novo review of a question of statutory construction. Id. at 530. Here, in contrast, the request for revised regulations is not based on a new legislative policy declaration but rather social science research compiled by petitioners.

In applying the "great deference" standard of review in the matter before us, the central question is not whether an inmate's age at either the time of the offense or the time of parole eligibility is relevant to the release decision as shown by research studies. Schundler, 211 N.J. at 549. Rather, the narrow issue framed in this litigation is whether the Board acted arbitrarily, capriciously, or

unreasonably in exercising its rulemaking authority by declining to incorporate social science research findings into the text of the administrative code.

As a general principle, policymaking based on developments in social and neurological science is best left to the legislative and executive branches. Notably, the Parole Act of 1979, N.J.S.A. 30:4-123.45 to -123.76, has not been amended to effectuate the reforms petitioners and amici advocate. Moreover, to the extent the judiciary has a role to play in setting or revising parole policy, our Supreme Court is better suited than an intermediate appellate court to consider the effects of the policy shift petitioners and amici urge us to impose on the executive branch without the imprimatur of legislation.

As we have noted, petitioners and amici seek to build upon a foundation of recent sentencing reforms that were predicated on scientific research on juvenile and young adult brain development. See e.g., N.J.S.A. 2C:44-1(b)(14) (creating a new mitigating sentencing factor when "[t]he defendant was under [twenty-six] years of age at the time of the commission of the offense."). It is by no means certain, however, that recent changes in sentencing laws based on brain science compel analogous changes to the parole system. There are, after all, important, inherent differences between the process and criteria for imposing

18

an initial sentence and the subsequent decision to release an imprisoned offender

on parole supervision. In <u>Berta</u>, for example, we explained:

> [T]he parole release decision is fundamentally different from the decision made by a trial court when imposing the initial sentence. Although N.J.A.C. 10A:71-3.11(b)(5) authorizes the Parole Board to consider the "[f]acts and circumstances of the offense" as a relevant factor, "'the gravity of the crime' cannot serve as 'an independent reason for continuing punishment and denying parole' under the 1979 Act. [<u>Application of Trantino</u>, 89 N.J. 347, 373-74 (1982)]. "That is because the punitive aspects of the sentence have been satisfied by the time the inmate is eligible for parole." <u>Acoli</u>, 250 N.J. at 457; <u>Trantino</u> [], 89 N.J. at 370.
>
> Accordingly, the parole decision is not intended to achieve, for example, just deserts. Nor does not it serve the interests of general deterrence, which is one of the foundational purposes of sentencing. <u>See</u> <u>State v. Locane</u>, 454 N.J. Super. 98, 122 (App. Div. 2018) (explaining that sentencing courts "focus on the severity of the crime . . . to assure the protection of the public and the deterrence of others. The higher the degree of the crime, the greater the public need for protection and the more need for deterrence[]" (quoting <u>State v. Megargel</u>, 143 N.J. 484, 500 (1996))). The parole release decision, rather, revolves solely around the likelihood that the inmate, if released, would commit a future crime. <u>See</u> <u>McGowan v. N.J. State Parole Bd.</u>, 347 N.J. Super. 544, 565 (App. Div. 2002) ("[T]he Board [must] focus its attention squarely on the likelihood of recidivism.").

Relatedly, in <u>State v. Kiriakakis</u>, our Supreme Court emphasized the New

Jersey Code of Criminal Justice has the "paramount goal of uniformity in

19

sentencing, ensuring 'that similarly situated defendants receive comparable sentences.'" 235 N.J. 420, 437 (2018) (internal citations omitted). Parole decisions, in contrast, do not further the goal of uniformity; rather, they entail highly individualized assessments based largely on an inmate's personal behavior and attitude while incarcerated. See Berta, 473 N.J. Super. at 305-06 (noting that overcoming the presumption of parole is a "highly predictive" determination that must take account "the aggregate of all the factors which may have pertinence") (quoting Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 359, 360 (1973)).

We add, at the risk of stating the obvious, sentencing is largely about culpability and, ultimately, punishment. Parole is not. In Berta, for example, we stressed that "an FET must not be imposed as a form of punishment; and . . . the decision to impose an FET beyond the presumptive FET, like the underlying decision to deny parole, must be tied directly to the goal of reducing the likelihood of future criminal behavior." Id. at 323.

The point simply is that given the inherent differences between sentencing and parole, petitioners' reliance on penological principles established in sentencing cases may be misplaced, or at least overstated. We do not mean to suggest that age is not relevant to the parole decision, which focuses on the

likelihood an inmate would commit new crimes if released into the community on parole supervision. No one disputes there is an inverse correlation between age and recidivism. While there may be new empirical studies to confirm that correlation, and recent brain development research to show why adolescents and young adults are more likely to commit crimes, it is hardly a recent discovery that convicted offenders "age out," to use common parlance. Forty years ago in State v. Davis, our Supreme Court recognized "age, as a demographic variable, has consistently been found to be strongly related to subsequent criminal activity." 96 N.J. 611, 618 (1984). And in Acoli, the Court explained, "[s]tudies have shown that as individuals age, their propensity to commit crime decreases." 250 N.J. at 469.

Petitioners rely heavily on Acoli to support their proposal to add a new parole factor focusing on age. In Acoli, the Court rejected the Board's finding there was a substantial likelihood the seventy-nine-year-old inmate would commit new crimes if paroled, concluding that finding was unsupported by evidence. Id. at 428, 430. Of particular relevance to this appeal, the Court commented, "[n]othing in the Parole Board's decision suggests that the Board considered in any meaningful way the studies on the age-crime curve in denying parole to Acoli." Id. at 448. Nevertheless, the Acoli Court did not direct the

Board to engage in rulemaking to amend the administrative code to add a new parole factor accounting for age. The Court was well aware of Acoli's age, and it noted the age-curve studies cited by the defendant. However, the Court did not mandate consideration of the age-crime curve throughout the age spectrum in a determination of parole.

Subsequently, in <u>Berta</u>, we reversed and remanded the Board's denial of parole to a seventy-one-year-old inmate. 473 N.J. Super. at 289-90. Citing <u>Acoli</u>, we explained, "[a]lthough Berta is significantly younger than [Acoli], he nonetheless is old enough that his age is a relevant consideration in predicting the likelihood of recidivism." <u>Id.</u> at 321-22. Accordingly, we instructed the Board "to account specifically for Berta's age, along with all relevant mitigating circumstances, in determining whether—and, if need be, explaining why—the preponderance of the evidence established a substantial likelihood that he will re-offend." <u>Id.</u> at 322. In doing so we explained that social science evidence may be relevant but also made clear "[w]e do not mean to suggest that the Board's assessment of inherently subjective circumstances . . . must be supported by peer-reviewed social science." <u>Id.</u> at 320 n.18. In short, nothing in <u>Berta</u> suggests the age-recidivism correlation must be accounted for in the text of the administrative code.

A-0494-22

We further emphasize that N.J.A.C. 10A:71-3.11(b) expressly provides the Board shall consider not only the enumerated factors listed in that subsection, but "in addition, may consider any other factors deemed relevant." As Acoli and Berta make clear, in any case where the Board fails to account for age when age is relevant, an inmate may appeal the denial of parole and assert that ground as error. In light of that remedy, and in the absence of legislation compelling the Board to consider a parole candidate's age, we decline to second guess the Board's decision to retain the current list of enumerated parole factors in the administrative code.

## III.

We turn next to the OPD's contention the Board acted arbitrarily, capriciously, and unreasonably by rejecting its proposed amendments to "avoid the risk of inappropriately treating youthful misconduct, and the lack of time to demonstrate increased maturity that mitigates the risk of future misconduct, as an aggravating factor in parole release decisions." Once again, the OPD and amici extrapolate principles developed in sentencing caselaw to support a proposed new policy that youth can never be considered as an aggravating factor militating against the presumption of parole or for an FET longer than the presumptive FET.

The OPD relies heavily on our Supreme Court's decision in <u>Rivera</u>. In that case, the nineteen-year-old defendant pled guilty to first-degree aggravated manslaughter and related offenses. <u>Rivera</u>, 249 N.J. at 291-92. The sentencing court gave "minimal weight" to mitigating factor seven[4] considering the defendant's young age, reasoning "if she had not been captured in this particular instance, her mind frame and the way [of] her thinking and her relationship with [her ex-boyfriend], could very well have resulted in additional crimes being committed." <u>Id.</u> at 295. The sentencing court "gave great weight to the fact that the risk she'll commit another offense, aggravating factor three."[5] <u>Ibid.</u>

The Supreme Court reversed and remanded for resentencing, recognizing that a "'defendant's relative youth would ordinarily insure to [their] benefit'" in sentencing. <u>Id.</u> at 301 (quoting <u>State v. Dunbar</u>, 108 N.J. 80, 95 (1987)) (highlighting the addition of mitigating factor fourteen, N.J.S.A. 2C:44-1(b)(14), which reads, "[t]he defendant was under [twenty-six] years of age at the time of the commission of the offense"). The Court concluded "the

---

[4] N.J.S.A. 2C:44-1(b)(7), which reads, "[t]he defendant has no history of prior delinquency or criminal activity of has led a law-abiding life for a substantial period of time before the commission of the present offense."

[5] N.J.S.A. 2C:44-1(a)(3), which reads, "[t]he risk that the defendant will commit another offense."

sentencing court engaged in impermissible speculation that [the] defendant would have engaged in other criminal conduct but did not have the opportunity to do so because of her youth." Id. at 303. The Court added,

> [i]n conclusion, the presumption that a defendant's youth may have prevented the defendant from having a criminal record cannot support a finding of aggravating factor three. We therefore hold that youth may be considered only as a mitigating factor in sentencing and cannot support an aggravating factor.
>
> [Ibid. (emphasis added).]

Read in context with the sentences that precede the underscored sentence, it appears the Court in Rivera was principally concerned with the inappropriate practice of inferring that a particular defendant would have committed additional offenses if they were afforded more time to accrue a criminal history. That inference runs diametrically counter to the presumption of innocence, essentially assuming that a defendant must have committed multiple unspecified crimes that were not even charged much less proven.

But even putting aside that inappropriate inference, we take note the Legislature amended the penal code to create a new mitigating sentencing factor when a crime is committed by a person under twenty-six years of age. The Legislature did not create a corresponding aggravating factor when the crime is committed by a more mature offender. We thus accept petitioners' interpretation

25

of <u>Rivera</u> that age can be used at a sentencing hearing as a predictor of recidivism in only one direction—one that favors a defendant.

The critical question raised in this appeal is whether that <u>sentencing</u> principle also applies in the context of parole.  As we noted in the preceding section, there are marked differences between sentencing and parole determinations.

We deem it noteworthy the administrative code was amended in 2021 to include factor twenty-four, which recognizes as relevant the "[s]ubsequent growth and increased maturity of the inmate during incarceration."  N.J.A.C. 10A:71-3.11(b)(24).  That factor offers an opportunity for inmates to argue on a case-by-case basis that their personal history while incarcerated militates in favor of parole.

In <u>Berta</u>, we specifically cautioned the Board against overreliance on temporally remote institutional infractions when applying factor twenty-four, commenting "[t]he Board has presented no empirical or even anecdotal evidence to support the counter-intuitive notion that a temporally remote pattern of persistent infractions is a better predictor of future recidivism than a far more sustained recent pattern of infraction-free conduct."  473 N.J. Super. at 314.

A-0494-22

We are unpersuaded by petitioners' argument this parole factor will be misused unless it is amended to expressly and categorically preclude the Board from considering youth as an aggravating circumstance. The OPD and amici acknowledge they cannot identify a single case where the Board considered an inmate's youth inappropriately. If such a situation should ever arise, an aggrieved inmate would have the right to appeal the denial of parole and the setting of a lengthy FET. Because that remedy is available to address improper consideration of an inmate's subsequent growth and increased maturity during incarceration, we conclude the Board did not act arbitrarily, capriciously, or unreasonably in declining to adopt the proposed amendments to N.J.A.C. 10A:71-3.11(b)(24).

IV.

We turn finally to OPD's contention the Board was arbitrary, capricious, and unreasonable in denying its proposal to amend and supplement N.J.A.C. 10A:71-2.2(c), which governs the release of confidential information, such as psychological reports, that are used in the parole decision-making process. N.J.A.C. 10A:71-2.2(c) currently reads:

> Inmates or parolees shall be afforded disclosure of adverse material or information considered at a hearing, provided such material is not classified as confidential by the Board or the Department [of Corrections]. If

A-0494-22

disclosure is withheld, the reasons for nondisclosure shall be noted in the Board's files, and such material or information shall be identified as confidential.

Additionally, N.J.A.C. 10A:22-2.7(d) governs inmates' access to their own mental health records:

> Copies of mental health records related to routine mental health care, treatment and counseling shall be provided to inmates. However, copies of mental health records generated by professional mental health staff, such as evaluative or administrative assessment reports, or reports that, if disclosed, would compromise the safety of the inmate or others, or the security or orderly operation of the correctional facility, shall not be provided to inmates without court order or consent protective agreement.

The gravamen of petitioners' argument is that as presently written, these regulations permit the Board to disregard the due process requirements spelled out in Thompson. There, an inmate appealed after he was denied parole. 210 N.J. Super. at 111. He argued the Board made several errors in denying parole and by imposing a twelve-year FET, including that the Board improperly withheld from disclosure documents it considered in making its determinations. Ibid.

We acknowledged the Board needs to use confidential information in reaching parole release decisions. Id. at 123. We also acknowledged:

The safe operation of a prison must be taken into account in determining the extent of legal process due a prisoner in the consideration of his parole release. Disclosures threatening to institutional security must be avoided. They may include evaluations and anonymous reports of fellow prisoners and of custodial staff members. Disclosure of therapeutic matters also should be avoided if it would interfere with prisoner rehabilitation and relationships with therapists.

[Ibid.]

The regulation in effect when Thompson was decided required disclosure to inmates or parolees,

of adverse material considered at a hearing, provided such material is not classified as confidential by the Department [of Corrections] and provided disclosure would not threaten the life or physical safety of any person, interfere with law enforcement proceedings or result in the disclosure of professional diagnostic evaluations which would adversely affect the inmate's rehabilitation or the future delivery of rehabilitative services. If disclosure is withheld, the reason for nondisclosure shall be noted in the Board's files, and such information shall be identified as confidential.

[Id. at 118 (quoting N.J.A.C. 10A:71-2.1(c)).[6]]

Ultimately, we held N.J.A.C. 10A:71-2.1(c) was facially valid, noting it adopted a procedure to "sufficiently protect the prisoner's due process rights

---

[6] As we explain, N.J.A.C. 10A:71-2.1 was later recodified as N.J.A.C. 10A:71-2.2.

with the least intrusion on the Department of Correction's legitimate concern for confidentiality." Id. at 124-26. Importantly for purposes of the present appeal, we instructed:

> When any document in a parole file is administratively removed from the prisoner's copy of the file, N.J.A.C. 10A:71-2.1(c) [the predecessor of N.J.A.C. 10A:71-2.2(c)] requires the document to be identified as confidential and the reason for nondisclosure to be noted in the Board's file. We will require the Board, after making a parole decision adverse to the prisoner, to state in its decision whether any document marked confidential played any substantial role in producing the adverse decision, and, if so, to record in its file which of them did so. In the event of an appeal, the Attorney General will include in the Statement of Items Comprising the Record the Board's statement on the matter, which may be worded in such a way as to effectively preserve the confidentiality of the withheld materials.
>
>     . . . .
>
> If the Board states that confidential materials played a substantial role in producing the adverse decision in a case appealed to this court, we will undertake to review the materials and determine the propriety of the decision to withhold them. If we conclude that nondisclosure was improper, the remedy might be a remand for reconsideration without the withheld materials, a remand for reconsideration after disclosure to the prisoner of the withheld materials, or, perhaps, an exercise of our original jurisdiction. The remedy will fit the needs of the individual case.
>
> [Id. at 126.]

N.J.A.C. 10A:71-2.1 has been amended since Thompson was decided. Language that confidential material should be disclosed when "disclosure would not threaten the life or physical safety of any person, interfere with law enforcement proceedings or result in the disclosure of professional diagnostic evaluations which would adversely affect the inmate's rehabilitation or the future delivery of rehabilitative services" was removed. 20 N.J.R. 2129(a) (Sept. 6, 1988).[7] After the passage of the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to 13.3, the regulation was amended again and recodified as N.J.A.C. 10A:71-2.2. See 43 N.J.R. 2144(b) (Aug. 15, 2011); see 44 N.J.R. 270(a) (Feb. 6, 2012).

The OPD and amici argue the post-Thompson revisions render the regulatory framework vulnerable to due process violations. They also contend the Board has adopted a de facto policy to deny disclosure of confidential information in all cases. As we have already stressed, any such categorical denial policy would constitute an abdication of discretion as required in Thompson and would thus be arbitrary, capricious, and unreasonable. We stated

---

[7] We note that language concerning disclosure that "would compromise the safety of the inmate or others, or the security or orderly operation of the correctional facility" remains in N.J.A.C. 10A:22-2.7(d).

31

unequivocally in <u>Thompson</u>, "[a] Parole Board rule or policy flatly prohibiting prisoner access to parole files would no longer be sustainable." 210 N.J. Super. at 122. We reaffirm that admonition.

The Board argues that N.J.A.C. 10:22-2.7(a), as presently written, "calls for a case-by-case analysis of whether the materials would compromise safety, security, or the orderly operation of the facility" and therefore satisfies the due process requirements spelled out in <u>Thompson</u>. The Board emphasizes that in <u>Thompson</u>, we acknowledged "[d]ue process is a flexible and dynamic concept. It calls for such procedural protections as the particular situation demands." 210 N.J. Super. at 123.

Despite the Board's assurances, we are troubled by what was revealed at oral argument. No advocate could recall a single instance where disclosure was granted by the Board. That said, there is no evidence in the sparse record before us to support or contradict either party's claims as to what happens with respect to disclosure decisions. In <u>State Bd. of Educ.'s Denial</u>, we acknowledged "we evaluate the issues before us based upon the limited administrative record developed in connection with the petition for rulemaking and the denial of the petition." 422 N.J. Super. at 527.

Had this been an appeal from a denial of disclosure, as in Thompson, we would have a record with which to scrutinize whether the Board complied with that precedential decision or instead violated the inmate's due process rights. But no such evidence has been presented to us in this appeal.

In sum, there is no credible evidence in the record the Board was violating the due process rights of inmates seeking parole by improperly withholding disclosure of relevant confidential information. Therefore, we are not persuaded the Board acted arbitrarily, capriciously, or unreasonably when it denied petitioners' request to amend its regulations to codify the procedural due process requirements that were announced in Thompson. See Schundler, 211 N.J. at 549.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0494-22